DRAPROP CORPORATION v CITY OF ANN ARBOR

Docket No. 223619. Submitted July 10, 2001, at Lansing. Decided September 11, 2001, at 9:05 A.M.

Draprop Corporation, the owner of two noncontiguous apartment buildings in the city of Ann Arbor, brought an action in the Washtenaw Circuit Court against the city, seeking to have sections of the city's historic preservation ordinance declared invalid and the designation of the two buildings as historic property within the city's "Individual Historic Properties Historic District" removed. The court, Timothy P. Connors, J., granted summary disposition in favor of the defendant, finding the historic designation proper under the Local Historic Districts Act (LHDA), MCL 399.201 et seq., and the city's ordinances. On appeal, the Court of Appeals, in an unpublished opinion per curiam, reversed the grant of summary disposition and, without retaining jurisdiction, remanded for further factual findings. On remand, the trial court again granted summary disposition in favor of the defendant. The plaintiff's delayed application for leave to appeal was granted.

The Court of Appeals held:

1. The designation of the plaintiff's properties as historic properties within an historic district is invalid because the "Individual Historic Properties Historic District" as constituted does not comply with the requirements under the LHDA for local historic districts. There is no basis for designating the plaintiff's buildings as part of any other properly established historic district within the city. The order granting summary disposition in favor of the defendant must be reversed and the matter must be remanded for entry of an order granting plaintiff's motion for partial summary disposition.

2. The LHDA does not permit the establishment of an historic district, the boundaries of which coincide with those of the entire city, in order to designate and subject to historical preservation regulation, individually selected, scattered properties throughout the city. The Individual Historic Properties Historic District in this case is an invalid exercise of the defendant's authority under the LHDA. The district does not meet the LHDA requirement that an historic district contain one resource or a group of resources that are related by history, architecture, archaeology, engineering, or culture.

Reversed and remanded.

1. MUNICIPAL CORPORATIONS — HISTORIC DISTRICTS.

The Local Historic Districts Act does not permit a city to establish an historic district, the boundaries of which coincide with those of the entire city, in order to designate and subject to historical preservation regulation individually selected, scattered properties throughout the city (MCL 399.201 *et seq.*).

2. MUNICIPAL CORPORATIONS — HISTORIC DISTRICTS — WORDS AND PHRASES — DISTRICT — RESOURCE.

The Local Historic Districts Act defines the term "resource" as one or more publicly or privately owned historic or nonhistoric buildings, structures, sites, objects, features, or open spaces located within an historic district; the act defines the term "historic district" as an area, or group of areas not necessarily having contiguous boundaries, that contains one resource or a group of resources that are related by history, architecture, archaeology, engineering, or culture (MCL 399.201a[i], [r]).

*Honigman, Miller, Schwartz and Cohn, LLP* (by *Susan K. Friedlaender*), for the plaintiff.

*Office of the City Attorney* (by *Kristen D. Larcom*), for the defendant.

Before: NEFF, P.J., and O'CONNELL and R. J. DANHOF*, JJ.

PER CURIAM. This historic preservation case, concerning defendant city of Ann Arbor's designation of two apartment buildings owned by plaintiff Draprop Corporation as historic property, is on appeal for the second time. In each instance, the trial court granted summary disposition in favor of defendant, finding the historic designation proper under the Local Historic Districts Act (LHDA), MCL 399.201 *et seq.*, and defendant's ordinances. In the first appeal, a panel of

---

* Former Court of Appeals judge, sitting on the Court of Appeals by assignment.

this Court reversed the grant of summary disposition for defendant and, without retaining jurisdiction, remanded for further factual findings. *Draprop Corp v Ann Arbor (Draprop I)*, unpublished opinion per curiam of the Court of Appeals, issued March 13, 1998 (Docket No. 198235). On remand, the trial court again granted summary disposition in favor of defendant. Plaintiff appeals by leave granted. We now reverse and remand.

We hold that defendant's historic district designation of plaintiff's properties is invalid because the "Individual Historic Properties Historic District" as constituted does not comply with requirements under the LHDA for local historic districts.[1] We find no basis for designation of the properties as part of any other properly established historic district within the city. We reverse the grant of summary disposition for defendant and remand for entry of an order granting plaintiff's motion for partial summary disposition.

I

Plaintiff is the owner of two apartment buildings in Ann Arbor, which are not contiguous properties and are not contained within any of the eight "traditionally" designated historic districts in the city. Rather, in 1994, the apartment buildings were designated on the basis of their "historical significance" to be included in an individual properties historic district, along with seventy-one other properties, by a city ordinance[2] adding the buildings to the Ann Arbor Register of His-

---

[1] In our view, this holding reiterates the finding of the panel in *Draprop I, supra,* as more fully explained herein.

[2] Ann Arbor Ordinance 58-94.

toric Places, which defendant contends is an historic "district" created by a 1988 ordinance[3] to include individual properties throughout the city.[4]

Plaintiff opposed the historic district designation of each building and filed a complaint in the circuit court, seeking to invalidate the city's historic preservation ordinance and the historic designation of the two apartment buildings. Defendant filed a motion for summary disposition. The trial court found plaintiff's challenge, based on constitutional due process and taking grounds, without merit and granted summary disposition for defendant.

On appeal, a panel of this Court determined that there were genuine issues of material fact concerning whether the two apartment buildings were located within an historic district pursuant to the LHDA, thus precluding summary disposition. *Draprop I, supra.* In so holding, the *Draprop I* panel stated:

> Under the LHDA, the Legislature permits local units, such as defendant, to establish historical districts in order to achieve the goals of historic preservation. Nothing in the LHDA enables defendant to pass an ordinance permitting it to select individual, isolated homes or buildings randomly located throughout the city limits that have historical significance. Rather, both the LHDA and defendant's ordinance

---

[3] Ann Arbor Ordinance 14-88.

[4] The genesis of defendant's 1988 and 1994 amendments of its Historic District Code was apparently a desire to designate individual properties throughout the city of Ann Arbor for historical preservation, which was impermissible under the code because it allowed only the preservation of "districts," not individual properties. At the time of the 1988 amendment, defendant added forty-seven individual properties to the newly named Ann Arbor Register of Historic Places, which led to the subsequent 1994 ordinance designating seventy-three additional individual properties, including plaintiff's two apartment buildings, as historic property. An alternative process for protecting individual properties as landmarks existed, but required the landowner's consent for designation.

require that historic preservation occur through the formation and amendment of historic *districts*—not individual historic buildings.

The *Draprop I* panel, while not retaining jurisdiction, remanded the case to the trial court for a resolution of the factual question whether the buildings were in an historical *district* and a determination whether defendant had "operated within the ambit of the LHDA and its own historic preservation ordinance in designating plaintiff's properties as historically significant." *Id.* The panel did not reach the merits of plaintiff's constitutional challenges. *Id.*

On remand, the parties filed cross-motions for summary disposition. The trial court granted defendant's motion and denied plaintiff's motion, finding no genuine issue of material fact regarding whether plaintiff's properties are in an historic district and concluding that defendant had "not operated beyond the ambit of the LHDA in the creation and execution of its historic preservation ordinances."

II

This case presents an issue of first impression. Although Michigan enacted an historic districts act in 1970,[5] granting local government the authority to create historic districts, this Court has not yet addressed the parameters of the enabling legislation in a published decision. In so doing, we concur with the *Draprop I* panel and reiterate at the outset of our decision what apparently was unclear to the trial court in the previous opinion in this case: the LHDA

---

[5] 1970 PA 169.

does not permit the establishment of an historic district, the boundaries of which coincide with those of the entire city, in order to designate and subject to historical preservation regulation, individually selected, scattered properties throughout a city.

A

The general principles regarding statutory construction are found in *Rose Hill Center, Inc v Holly Twp*, 224 Mich App 28, 32; 568 NW2d 332 (1997):

> The primary goal of statutory interpretation is to ascertain and give effect to the intent of the Legislature in enacting a provision. Statutory language should be construed reasonably, keeping in mind the purpose of the statute. The first criterion in determining intent is the specific language of the statute. If the statutory language is clear and unambiguous, judicial construction is neither required nor permitted, and courts must apply the statute as written. However, if reasonable minds can differ regarding the meaning of a statute, judicial construction is appropriate. [Citations omitted.]

Statutes should be construed so as to prevent absurd results, injustice, or prejudice to the interests of the public. *Camden v Kaufman*, 240 Mich App 389, 395; 613 NW2d 335 (2000).

This Court reviews de novo rulings on motions for summary disposition. *Van v Zahorik*, 460 Mich 320, 326; 597 NW2d 15 (1999). A motion for summary disposition under MCR 2.116(C)(10) may be granted if the affidavits or other documentary evidence show that there is no genuine issue in respect to any material fact, and the moving party is entitled to judgment as a matter of law. *Smith v Globe Life Ins Co*, 460 Mich 446, 454; 597 NW2d 28 (1999). The affidavits,

pleadings, depositions, admissions, and other documentary evidence must be viewed in the light most favorable to the party opposing the motion. *Id.*

B

As the enabling statute for local historic preservation in Michigan, the LHDA reflects the Legislature's reasoned scheme for balancing the community's cultural, aesthetic, and economic interests in historic preservation with landowners' rights in their property. MCL 399.201 *et seq.*; see House Legislative Analysis, HB 5504, August 24, 1992; OAG, 1995-1996, No 6919, p 215 (October 10, 1996); OAG, 1979-1980, No 5514, p 250 (July 16, 1979). Although the LHDA gives local government the authority to regulate private property for historic preservation purposes, such authority must be exercised in keeping with the mechanisms set forth in the act to maintain the careful balance between public and private interests.

MCL 399.202, § 2 of the LHDA, provides:

Historic preservation is declared to be a public purpose and the legislative body of a local unit may by ordinance regulate the construction, addition, alteration, repair, moving, excavation, and demolition of resources in historic districts within the limits of the local unit. The purpose of the ordinance shall be to do 1 or more of the following:

(a) Safeguard the heritage of the local unit by preserving 1 or more historic districts in the local unit that reflect elements of the unit's history, architecture, archaeology, engineering, or culture.

(b) Stabilize and improve property values in each district and the surrounding areas.

(c) Foster civic beauty.

(d) Strengthen the local economy.

(e) Promote the use of historic districts for the educa-
tion, pleasure, and welfare of the citizens of the local unit
and of the state.

The LHDA defines the term "historic district" as "an
area, or group of areas not necessarily having contig-
uous boundaries, that contains 1 resource or a group
of resources that are related by history, architec-
ture, archaeology, engineering, or culture." MCL
399.201a(i). The LHDA defines the term "resource" as
"1 or more publicly or privately owned historic or
nonhistoric buildings, structures, sites, objects, fea-
tures, or open spaces located within a historic dis-
trict." MCL 399.201a(r).

The LHDA sets forth detailed procedures and
timeframes for establishing an historic district.

A local unit may, by ordinance, establish 1 or more his-
toric districts. The historic districts shall be administered
by a commission established pursuant to section 4 [MCL
399.204]. Before establishing a historic district, the legisla-
tive body of the local unit shall appoint a historic district
study committee. . . . The committee shall do all of the
following:

(a) Conduct a photographic inventory of resources within
each proposed historic district following procedures estab-
lished or approved by the bureau.

(b) Conduct basic research of each proposed historic dis-
trict and the historic resources located within that district.

(c) Determine the total number of historic and nonhis-
toric resources within a proposed historic district and the
percentage of historic resources of that total. . . .

(d) Prepare a preliminary historic district study commit-
tee report that addresses at a minimum all of the following:

(i) The charge of the committee.

(ii) The composition of the committee membership.

(iii) The historic district or districts studied.

(iv) The boundaries for each proposed historic district in writing and on maps.

(v) The history of each proposed historic district.

(vi) The significance of each district as a whole, as well as a sufficient number of its individual resources to fully represent the variety of resources found within the district, relative to the evaluation criteria. . . . [MCL 399.203(1).]

The LHDA sets forth specific requirements for review of local action by state historical agencies, reporting, notice to property owners and the public, and a public hearing in establishing an historic district. MCL 399.203. The LHDA also provides penalties of not more than $5000 for violations of the act. MCL 399.215.

C

In accordance with the LHDA, defendant adopted an historical preservation ordinance and subsequently enacted an ordinance establishing the Individual Historic Properties Historic District, as set forth in the facts of the *Draprop I* opinion:

In March 1990, defendant created an individual historic properties district study committee to research and propose properties in Ann Arbor for designation as historically or architecturally significant sites. The committee initially considered 300 potential sites, including plaintiff's two apartment buildings. Although the list was later reduced to 73 sites, plaintiff's properties remained on the list. In August 1994, the committee held an informational meeting regarding the proposed historic designation for the 73 targeted properties. These properties would become part of defendant's historic register upon the city council's adoption of an ordinance proposing the same. Ann Arbor Ordinances, § 8:408(8). The city planning commission also held a formal public hearing regarding the properties in September 1994, and the city council held several public hearings in October

1994 where the historic designation issue was discussed. Plaintiff, through counsel, objected at each stage of the proceedings to the committee's inclusion of its properties in the historic preservation process. Although the city council had at one point decided to separately consider plaintiff's properties from the others on the list, defendant's city council passed an ordinance in November 1994 that incorporated all 73 originally-proposed properties within defendant's register of historic places.

Defendant established the individual properties historic district under the auspices of the LHDA. Defendant established a study committee, prepared a resource inventory, consulted with and reported to state oversight agencies, and provided notice and a public hearing under the act's mandates. Nonetheless, defendant's concept of an individual properties historic district does not comport with the requirements set forth in the LHDA for establishing an historic district.

Conceptually, defendant's individual properties historic district is not in keeping with an historic district envisioned under the act. Defendant's district has no defined boundaries other than that of the city as a whole, from which the scattered properties were selected. See MCL 399.203(1)(d)(iv). There is no history to prepare of the district per se, as required by subsection 3(1)(d)(v), because the district is a collection of scattered individual resources throughout the city, and, thus, there is no collective history. Likewise, there can be no realistic determination of the total number of historic and nonhistoric resources within the historic district pursuant to MCL 399.203(1)(c), which would require an inventory of every resource in the city.

Given the incongruities between the individual properties historic district formulation and the LHDA requirements, we conclude that the district is an invalid exercise of defendant's authority under the LHDA. We recognize that conceivably the LHDA requirements could technically be met, for instance, by preparing a history of the city itself, subsection 3(1)(d)(v), and totaling the number of historic and nonhistoric resources in the entire city, subsection 3(1)(c). However, interpreting the statute to permit an historic district consisting of scattered individual properties throughout the city would lead to absurd results vis-a-vis the mechanisms set forth in the LHDA and clearly was not envisioned by the Legislature. Moreover, such an interpretation diminishes the important safeguards established in the act to protect individual property owners' rights. Although a property owner's consent is not required under the LHDA for inclusion in an historic district, the detailed mechanisms for establishing such districts protect against the arbitrary imposition of historic district regulations on individual property owners. Bypassing the established mechanisms circumvents these safeguards.

Most convincing in our analysis, however, is the fact that defendant's individual properties historic district does not meet the LHDA requirement that, by definition, an historic district contain "1 resource or a group of resources that are related by history, architecture, archaeology, engineering, or culture." MCL 399.201a(i). According to the study committee's final report, of the properties comprising the individual properties historic district, forty-eight properties were chosen for their architectural significance, eight properties were chosen for their historical signifi-

cance, eight properties were chosen for their industrial/commercial significance, three properties were chosen because they are significant school buildings, and four structures were chosen because they are significant for their visual features and physical character. The buildings or structures thus are not related by one of the act's required features, and do not constitute an historic district under the LHDA.

III

Because we conclude that defendant was without authority under the LHDA to establish the Individual Historic Properties Historic District, we need not reach the merits of plaintiff's constitutional claims.[6] The ordinance creating the district is invalid. Defendant's historic preservation ordinance, specifically § 8:406 of chapter 103 of title VIII of the Code of the City of Ann Arbor provides that the designation of an historic district is by local ordinance pursuant to the LHDA. Plaintiff's properties are not part of a legally recognizable historic district. Defendant did not act within the ambit of the LHDA and its own historic preservation ordinance in designating plaintiff's buildings as historic properties, and thus the trial court's grant

---

[6] Defendant derives its authority to regulate property for historic preservation from the LHDA as the enabling statute, and we therefore reject, and likewise do not address, defendant's argument that it has authority for historic preservation regulation independent of the LHDA under its police power. See *Bivens v Grand Rapids*, 443 Mich 391, 397; 505 NW2d 239 (1993) (municipal corporations derive their authority from the state, and they have no inherent power); *Rochester v Superior Plastics, Inc*, 192 Mich App 273, 275; 480 NW2d 620 (1991) ("Michigan cities have no inherent power in the field of zoning but rather derive their authority to zone from the zoning enabling act.").

of summary disposition in favor of defendant was improper.

Reversed and remanded for entry of an order granting summary disposition in favor of plaintiff. We do not retain jurisdiction.