TWICHEL v MIC GENERAL INSURANCE CORPORATION

Docket No. 228363. Submitted May 7, 2002, at Detroit. Decided May 31, 2002, at 9:00 A.M. Leave to appeal sought.

Mark T. Twichel, as personal representative of the estate of Brady S. Sies, brought an action in the Genesee Circuit Court against MIC General Insurance Corporation, seeking a declaration that a no-fault automobile insurance policy of the defendant provides personal protection insurance coverage for the decedent's fatal automobile accident. At the time of the accident, the decedent resided in the household of his grandfather, who was insured under the defendant's policy. The decedent was driving a truck that he had obtained from its owner less than thirty days before the accident after paying a down payment. The decedent had not yet obtained title to, or insurance for, the truck. On cross-motions for summary disposition, the court, Archie L. Hayman, J., granted the plaintiff's motion and issued a declaration of coverage. The defendant appealed.

The Court of Appeals *held*:

1. Subsection 3113(b) of the no-fault act, MCL 500.3113(b), provides that a person is not entitled to be paid personal protection insurance benefits for accidental bodily injury if, at the time of the accident, the person was the owner or registrant of an uninsured motor vehicle involved in the accident. Subsections i and iii of subsection 3101(2)(g) of the no-fault act, MCL 500.3101(2)(g)(i), (iii), define "owner" to include, in subsection i, a person renting a motor vehicle or having the use thereof, under a lease or otherwise, for a period that is greater than thirty days and, in subsection iii, a person who has the immediate right of possession of a motor vehicle under an installment sale contract. In this case, the decedent cannot be deemed an owner of the truck in which he had his fatal accident under subsection i because that subsection requires actual use of the motor vehicle, not merely the right to use the motor vehicle, for more than thirty days. The decedent also cannot be deemed an owner of the truck under subsection iii because the transaction in which the decedent obtained the truck from its owner did not involve an installment sale contract, as defined by the Motor Vehicle Sales Finance Act, MCL 492.101 *et seq.*, to mean a contract for the retail sale of a motor vehicle, or that has a similar purpose or effect, under which part or all of the price is payable

in two or more scheduled payments after the making of the contract.

2. Uninsured motorists coverage for the decedent's accident under the defendant's policy is not excluded by a policy exclusion for bodily injury sustained by an insured while occupying a motor vehicle owned by that insured that is not insured for uninsured motorists coverage under the policy. The decedent was not an owner of the truck for purposes of the no-fault act and for purposes of uninsured motorists coverage. To the extent that the policy was ambiguous concerning what constitutes ownership, that ambiguity must be construed against the defendant as drafter of the policy and in favor of coverage.

Affirmed.

1. INSURANCE — NO-FAULT — VEHICLE OWNERS — USE FOR MORE THAN THIRTY DAYS.

A user of a motor vehicle, in order to be deemed its owner for purposes of the no-fault act on the basis of use of the vehicle for more than thirty days, must have actual use of the vehicle, not merely the right to use the vehicle, for more than thirty days (MCL 500.3101[2][g][i]).

2. INSURANCE — NO-FAULT — VEHICLE OWNERS — INSTALLMENT SALE CONTRACTS.

A person may be deemed an owner of a motor vehicle for purposes of the no-fault act on the basis of having the immediate right of possession of the vehicle under an installment sale contract if the sale involves a contract for the retail sale of the vehicle, under which contract part or all of the price is payable in two or more scheduled payments after the making of the contract (MCL 492.102[9], 500.3101[2][g][iii]).

*Wascha & Waun, P.C.* (by *Michael P. Parillo* and *Thomas W. Waun*), for the plaintiff.

*Siemion, Huckabay, Bodary, Padilla, Morganti & Bowerman, P.C.* (by *Charles A. Huckabay* and *Raymond W. Morganti*), for the defendant.

Before: SMOLENSKI, P.J., and NEFF and WHITE, JJ.

SMOLENSKI, P.J. In this action for declaratory relief, defendant appeals as of right from an order granting summary disposition to plaintiff and denying summary disposition to defendant. We affirm.

Plaintiff's decedent, Brady S. Sies, was killed in an automobile accident when he struck a disabled vehicle. At the time, the decedent was driving an uninsured pickup truck. The decedent lived in the home of his grandfather, who was insured under an automobile insurance policy issued by defendant. Plaintiff alleged that, as a resident relative in the household of his grandfather, the decedent was entitled to coverage under the insurance policy issued by defendant.

Under the no-fault act, MCL 500.3101 *et seq.*, a person is not entitled to personal injury protection (PIP) benefits for accidental bodily injury if, at the time of the accident, the person was the "owner" or "registrant" of a motor vehicle involved in the accident, for which insurance required under the act was not in effect. MCL 500.3113(b). Defendant denied plaintiff's claim for PIP benefits on the basis of this statute, contending that the decedent was an "owner" of the uninsured pickup truck involved in the accident. The trial court granted plaintiff's motion for summary disposition and denied defendant's cross-motion, finding that the decedent was not an "owner" of the truck and, therefore, not excluded from receiving benefits under defendant's policy.

The term "owner" is defined in the no-fault act, as follows:

> (g) "Owner" means any of the following:
>
> (i) A person renting a motor vehicle or having the use thereof, under a lease or otherwise, for a period that is greater than 30 days.
>
> (ii) A person who holds the legal title to a vehicle, other than a person engaged in the business of leasing motor vehicles who is the lessor of a motor vehicle pursuant to a lease providing for the use of the motor vehicle by the lessee for a period that is greater than 30 days.

(iii) A person who has the immediate right of possession of a motor vehicle under an installment sale contract. [MCL 500.3101(2)(g).]

More than one person can be considered the "owner" of a motor vehicle for purposes of MCL 500.3101(2)(g). See *Integral Ins Co v Maersk Container Service Co, Inc*, 206 Mich App 325, 332; 520 NW2d 656 (1994).

The primary goal of judicial interpretation of statutes is to ascertain and give effect to the intent of the Legislature through reasonable construction, in consideration of the purpose of the statute and the object sought to be accomplished. *Frankenmuth Mut Ins Co v Marlette Homes, Inc*, 456 Mich 511, 515; 573 NW2d 611 (1998), citing *Witherspoon v Guilford*, 203 Mich App 240, 247; 511 NW2d 720 (1994). If the plain and ordinary meaning of a statute is clear and unambiguous, judicial construction is neither necessary nor permitted. *Cherry Growers, Inc v Agricultural Marketing & Bargaining Bd*, 240 Mich App 153, 166; 610 NW2d 613 (2000). However, "[w]hen reasonable minds may differ with regard to the meaning of a statute, the courts must look to the object of the statute, the harm it is designed to remedy, and apply a reasonable construction that best accomplishes the purpose of the statute." *Chop v Zielinski*, 244 Mich App 677, 680; 624 NW2d 539 (2001). Furthermore, " '[s]tatutory language should be construed reasonably, keeping in mind the purpose of the statute.' " *Draprop Corp v Ann Arbor*, 247 Mich App 410, 415; 636 NW2d 787 (2001), quoting *Rose Hill Center, Inc v Holly Twp*, 224 Mich App 28, 32; 568 NW2d 332 (1997).

In his deposition, Matthew Roach testified that he sold the vehicle to the decedent on November 12, 1998. On that day, the decedent gave Roach $300, half

of the agreed upon $600 purchase price. Roach accepted the $300 payment and gave the decedent the truck and all its keys, but retained the truck's title. It was Roach's intent that he would sign over the title to the decedent when the remainder of the purchase price was paid. Roach's license plates were still on the truck when he gave the truck to the decedent. Roach had insurance on the vehicle until around November 1 or 5, when he switched that insurance to another vehicle. He testified that he left the responsibility for transferring the plates and obtaining insurance for the truck to the decedent. According to Roach, the decedent was aware that the truck was not insured at that point. However, the decedent's father, Calvin Sies, testified that the decedent told him that Roach's insurance policy would not lapse for another month and that the decedent would wait until then to transfer title. The fatal accident occurred on November 17, 1998. After the decedent's funeral, his stepmother gave Roach $200 as final payment for the truck.

It is undisputed that the decedent did not hold legal title to the vehicle at the time of the accident. Nevertheless, defendant argues that the decedent was an "owner" of the vehicle under MCL 500.3101(2)(g) because (1) he had a *right* to exclusive use of the vehicle for a period exceeding thirty days (even though he had not *actually* used the pickup truck for more than thirty days at the time of the accident) or (2) he had the immediate right of possession of the pickup truck under an installment sale contract.

We first address the argument that the decedent was an "owner" of the pickup truck because he had the right to use the vehicle for more than thirty days. In *Ardt v Titan Ins Co*, 233 Mich App 685, 690; 593 NW2d 215 (1999), this Court determined that the

phrase "having the use" of a motor vehicle, for the purpose of defining the term "owner" under MCL 500.3101(2)(g)(i), means "using the vehicle in ways that comport with concepts of ownership. The provision does not equate ownership with any and all uses for thirty days, but rather equates ownership with 'having the use' of a vehicle for that period." In *Ardt*, there was conflicting testimony regarding how often the injured driver drove the vehicle, but there was no dispute that he had actually driven it for more than thirty days. This Court determined that the occasional usage attested to by the plaintiff might not be sufficient to render the injured driver an owner of the truck, but the usage to which the defense witness attested might be sufficient under the statute. Therefore, a genuine issue of material fact remained for resolution at trial, rendering the trial court's grant of summary disposition to the defendant inappropriate. *Ardt, supra* at 691.

In *Chop, supra* at 678, the plaintiff was injured while driving an uninsured vehicle that was registered to her ex-husband. There was no dispute that the plaintiff regularly used the vehicle between late April 1997 and mid-September 1997, when the accident occurred. *Id.* at 680-681. In her deposition, the plaintiff testified that her ex-husband took the car in July 1997 to have it repaired and used the car for one additional week during this period. However, this Court noted the plaintiff's admission that her ex-husband did not use the car from the time it was repaired in July 1997 to the time of the accident in mid-September 1997. *Id.* at 681, n 1. Finding that the plaintiff's use of the car "was possessory use that comports with the concepts of ownership," this Court determined that there was no issue of fact regarding whether the plaintiff had possessory use of the car

for more than thirty days before the date of the accident and was thus an owner of the car under MCL 500.3101(2)(g)(i). *Chop, supra* at 681-682.

While instructive, *Ardt* and *Chop* do not squarely resolve the issue presented in this case. Here, it is undisputed that the decedent had the regular use of the vehicle for a period considerably less than thirty days before the accident occurred.

Defendant argues that, under *Ringewold v Bos*, 200 Mich App 131; 503 NW2d 716 (1993), it is immaterial whether the decedent *actually* had the regular use of the vehicle for thirty days because he *would have had* the right to use the vehicle for thirty days, had he not died. In *Ringewold*, the plaintiff was injured when her car was struck by a Volkswagen. *Id.* at 133. The Volkswagen had been purchased by the defendant's former husband for their daughter, fifteen days before the accident occurred. *Id.* He had purchased the vehicle from a repair shop and paid the entire purchase price, but had failed to make arrangements to record the transfer of title. *Id.* at 133-134. The plaintiff sought damages from the defendant under the owner's liability section of the Michigan Vehicle Code, MCL 257.401, and the trial court granted summary disposition to the plaintiff on the basis that the defendant was an "owner" of the Volkswagen under that statute. *Ringewold, supra* at 133.

The defendant claimed that she was not the "owner" of the Volkswagen for purposes of the owner's liability statute because she did not hold legal title to the vehicle and did not have possession of it for more than thirty days before the accident. *Id.* at 133-134. However, during discovery, the defendant admitted that she was the owner of the vehicle and that her former husband had purchased the vehicle in the defendant's name for their daughter's use. *Id.* at

136. The defendant also insured the vehicle under her automobile insurance policy and switched the license plates from a previously owned car to the Volkswagen. *Id.*

On appeal, this Court noted that the case was brought under the owner's liability statute and that the purpose of that statute is "to place the risk of damage or injury upon the person who has ultimate control of a vehicle." *Id.* at 134. Therefore, it was in this context that this Court was evaluating the question of ownership, as that concept related to claims asserted under that statute. *Id.* at 134-135. Because the owner's liability statute is part of the Michigan Vehicle Code, this Court relied on the definition of "owner" in that act,[1] and determined that the defendant was an "owner" of the Volkswagen because she had exclusive use of the vehicle for a period exceeding thirty days. *Id.* at 135-136. This Court found that, under the circumstances of the case, where the defendant had transferred license plates, insured the vehicle, and admitted that it was purchased in her name for her daughter's use, and "in view of the Legislature's intention to place liability on the person who is ultimately in control of the vehicle under the owner's liability section," the definition of ownership in the Michigan Vehicle Code imposed liability on any person who had a "right to exclusive use" for a period exceeding thirty days, "regardless of whether that person has, in fact, controlled the vehicle for that period. . . . To conclude otherwise would be to give owners incentive to delay formalization of title and deny ownership in an effort to avoid liability under the statute." *Id.* at 137-138.

---

[1] The definition of the term "owner" found in the owner's liability statute is substantially the same as the definition found in the no-fault act. Compare MCL 257.37 and MCL 500.3101(2)(g).

Turning to the present case, we are not persuaded that the holding in *Ringewold*—that for purposes of the owner's liability statute, a person is an "owner" of a motor vehicle if, although the person did not have actual exclusive use of the vehicle for thirty days, the person had the right to use the vehicle for more than thirty days—should be extended to a case brought under the no-fault act. In *Ringewold*, this Court narrowed its decision to the facts of the case and pointedly noted that the case was brought under the owner's liability statute, the purpose of which is to place liability on the person who had ultimate control of the vehicle. In contrast, the basic goal of Michigan's no-fault insurance system "is to ensure persons injured in motor vehicle accidents of 'assured, adequate and prompt reparation' for certain economic losses." *Travelers Ins v U-Haul of Michigan, Inc*, 235 Mich App 273, 282; 597 NW2d 235 (1999) (emphasis omitted). Because these statutes have different purposes, it is not unreasonable to construe their similar language in a different manner, under different factual circumstances. This case is distinguishable from *Ringewold*, where the defendant's former husband paid the full purchase price for the vehicle but failed to make arrangements to record the transfer in accordance with the law, and the defendant insured the vehicle and switched the license plates from a previously owned vehicle. In the present case, the decedent did not pay the full price, was not given the title to the vehicle because the sale was not complete, and retained the seller's plates. Even applying the *Ringewold* analysis, this is not a case "where ownership has been transferred permanently." *Ringewold, supra* at 138.

Furthermore, both *Chop* and *Ardt* strongly suggest that, under the no-fault act, use must be for thirty or

more days. According to *Ardt*, MCL 500.3101(2)(g)(i) "does not equate ownership with any and all uses for thirty days, but rather equates ownership with 'having the use' of a vehicle *for that period." Ardt, supra* at 690 (emphasis added). Further, the decision in *Chop* goes into some detail to establish the length of time that the plaintiff had the use of the vehicle and concludes that "there is no issue of fact regarding whether plaintiff had possessory use of the car for more than thirty days *before* the date of the accident." *Chop, supra* at 682 (emphasis added).

Therefore, for purposes of determining ownership under MCL 500.3101(2)(g)(i), we conclude that an individual must have actual use of the motor vehicle, not merely the right to use the motor vehicle, for more than thirty days. Here, it is undisputed that the decedent had the use of the motor vehicle for less than thirty days. Therefore, the decedent was not an "owner" of the vehicle under this statutory provision.

Defendant also argues that the decedent was the "owner" under MCL 500.3101(2)(g)(iii) because he had the immediate right of possession of the pickup truck under an "installment sale contract." Because neither the word "installment" nor the phrase "installment sale contract" is defined in the no-fault act, defendant argues that this Court should construe the term "installment" in accordance with the definition found in *Merriam Webster's Collegiate Dictionary* (10th ed), p 606, to wit: "One of the parts into which a debt is divided when payment is made at intervals." According to defendant, the evidence here indicated that the decedent had entered into an "installment sale contract" with Roach. Because the decedent did not pay the debt all at once, defendant argues that the decedent's subsequent payments would have been installments. Moreover, because the decedent was

given the vehicle at the time he made the down payment, he had the immediate right of possession. Therefore, argues defendant, the sale of the pickup truck to the decedent was an "installment sale contract," and the decedent was an "owner" under MCL 500.3101(2)(g)(iii).

In response to this argument, plaintiff notes that because the term "installment" is defined in neither the no-fault act nor the Michigan Vehicle Code, this Court should examine the Motor Vehicle Sales Finance Act, MCL 492.101 *et seq.*, where an "installment sale contract" is defined as "a contract for the retail sale of a motor vehicle, or which has a similar purpose or effect, under which part or all of the price is payable in 2 or more scheduled payments subsequent to the making of the contract." MCL 492.102(9). Plaintiff contends that the sale in this case cannot be considered an "installment sale contract" because it did not involve the retail sale of a motor vehicle and because there was no payment schedule. In contrast, defendant argues that the preamble of the Motor Vehicle Sales Finance Act indicates that the act applies to "persons engaged in the business of making or financing such sales" and, therefore, does not apply to the sale in the present case, which occurred between two private individuals, friends and coworkers, involved in a single transaction for the sale of a motor vehicle.

"It is a well-known principle that the Legislature is presumed to be aware of, and thus to have considered the effect on, all existing statutes when enacting new laws." *Walen v Dep't of Corrections*, 443 Mich 240, 248; 505 NW2d 519 (1993). Therefore, when the Legislature added the definition of "owner" to the no-

fault act,[2] it presumably was aware that the phrase "installment sale contract" had already been defined in the Motor Vehicle Sales Finance Act, and presumably intended the no-fault definition to mean one who had the immediate right to possession of a vehicle under the installment financing described in the Motor Vehicle Sales Finance Act.

Moreover, were we to resort to a dictionary definition to find the legislative intent in including this technical term in the no-fault act, we would note that "installment sale" is defined in Blacks Law Dictionary (6th ed), p 799, as a "[c]ommercial arrangement by which buyer makes initial down payment and signs a contract for payment of the balance in installments over a period of time." In the present case, there was no evidence of a written contract between Roach and the decedent, and there was no evidence that the decedent was expected to pay the balance owing on the vehicle in installments over a period. We therefore find that the decedent was not an "owner" of the pickup truck under MCL 500.3101(2)(g)(iii), because the transaction between the decedent and Roach was not a retail sale or a commercial transaction, and the decedent therefore had no immediate right of possession under an installment sale contract.

Finally, defendant argues that the decedent's estate is barred from receiving uninsured motorist benefits because the decedent sustained bodily injury while occupying an uninsured motor vehicle that he "owned" under the terms of the policy. Because uninsured motorist benefits are not statutorily required, claims for such benefits must be based on the language of the insurance policy. *Rohlman v Hawkeye-Security Ins Co*, 442 Mich 520, 525; 502 NW2d 310

---

[2] See 1988 PA 126, § 1.

(1993). An insurance contract must be enforced in accordance with its terms. *Upjohn Co v New Hampshire Ins Co*, 438 Mich 197, 207; 476 NW2d 392 (1991). The terms of an insurance policy are given their commonly used meanings, in context, unless clearly defined in the policy. *Henderson v State Farm Fire & Casualty Co*, 460 Mich 348, 354; 596 NW2d 190 (1999); *Group Ins Co of Michigan v Czopek*, 440 Mich 590, 596; 489 NW2d 444 (1992). Ambiguities are to be strictly construed against the insurer, who is the drafter of the contract. *State Farm Mut Automobile Ins Co v Enterprise Leasing Co*, 452 Mich 25, 38; 549 NW2d 345 (1996). Further, exclusionary clauses are to be strictly construed against the insurer. *Auto-Owners Ins Co v Churchman*, 440 Mich 560, 567; 489 NW2d 431 (1992).

Defendant contends that plaintiff's claim for uninsured motorist benefits is excluded under the policy by the exclusions section of "Part C—Uninsured Motorists Coverage," which states, in pertinent part:

A. We do not provide Uninsured Motorists Coverage for "bodily injury" sustained:

1. By an "insured" while "occupying," or when struck by, any motor vehicle owned by that "insured" which is not insured for this coverage under this policy. This includes a trailer of any type used with that vehicle.

The only vehicles listed on the declarations page of the insurance policy are a 1994 Chevrolet, a 1992 Buick, and a 1998 Chevrolet. Defendant therefore maintains that, because the decedent sustained bodily injury while occupying a vehicle not listed in the policy, the only question regarding the exclusion is whether the decedent "owned" the 1988 pickup truck involved in the accident. Although defendant also argues that the decedent was an owner within the

context of the no-fault statute, defendant contends that, for uninsured motorist benefits, the question whether the decedent "owned" the truck should be decided within the context of the policy. Because the policy does not define the term "owned," defendant would have this Court accept a dictionary definition as the "commonly used meaning" of that term. According to defendant, the *Merriam Webster's Collegiate Dictionary* (10th ed) defines the term "own" as "a: to have or hold as property: POSSESS" or "b: to have power over: CONTROL." Defendant contends that when Roach sold the pickup truck to the decedent, the decedent took both possession and control of the truck, which continued through the date of the accident. Therefore, defendant argues, applying the common usage of the word "own," the decedent "owned" the truck, the exclusion applies, and the decedent's estate is not entitled to uninsured motorists benefits under the policy.

Plaintiff argues that the term "owned" as used in the insurance contract is ambiguous at best because, while a court may reasonably establish the meaning of a contract term not defined in the contract by consulting a dictionary, it would also be reasonable for a court to refer to statutory definitions, particularly here, where reasonable definitions of "owner" are statutorily provided. Plaintiff argues that, because the decedent did not fall within any of the instances of ownership cited in the relevant statutes, he should not be considered to have "owned" the pickup truck involved in the accident under the policy.

We find plaintiff's analysis to be the better one. Because the entire case centers on the question whether the decedent was the "owner" of the vehicle at the time of the accident, it is somewhat disingenuous for defendant to suggest that the term takes a dif-

ferent meaning under the policy than it does under the relevant statutes, particularly where the policy does not otherwise define the term. Moreover, the terms "possess" and "control" are also terms of art that are contained within the relevant statutory definitions. Having found that the decedent was not the "owner" of the vehicle under the no-fault act, we also find that he did not own the vehicle pursuant to the insurance policy. To the extent that the policy is ambiguous on what constitutes ownership, that ambiguity must be construed against defendant as the drafter of the policy and in favor of coverage.

Affirmed.