**Michigan Supreme Court**
**Lansing, Michigan 48909**

# Opinion

Chief Justice
Maura D. Corrigan

Justices
Michael F. Cavanagh
Elizabeth A. Weaver
Marilyn Kelly
Clifford W. Taylor
Robert P. Young, Jr.
Stephen J. Markman

**FILED MARCH 9, 2004**

MARK TODD TWICHEL, Personal
Representative of the Estate
of BRADY S. SIES, Deceased,

    Plaintiff-Appellee,

v                             No. 121822

MIC GENERAL INSURANCE
CORPORATION,

    Defendant-Appellant.
_____

**PER CURIAM**

This case involves whether defendant insurer, MIC General Insurance Corporation, is liable for either (1) no-fault personal protection insurance benefits or (2) policy-provided uninsured motorist benefits as the result of a fatal accident. The issue is whether the deceased was the "owner" of the vehicle under either MCL 500.3113(b) or the language of the policy. The Court of Appeals held that the deceased was not the owner, and that benefits were therefore payable. We reverse.

1

At the time of the fatal accident on November 17, 1998, decedent Brady S. Sies was driving a 1988 GMC pickup truck. Five days earlier, he had purchased the truck from a friend, Matthew Roach. The sale price was set at $600. Sies gave Roach $300 and was to pay the remainder at a later date. Sies took possession of the vehicle, but the title was not signed over because of the incomplete payment. There was no insurance policy listing the vehicle.

At the time of the accident, Brady Sies was living with his grandfather, Elmer Sies, who had a policy issued by the defendant covering his vehicles.[1] The personal representative of Brady Sies's estate brought this action against the defendant, claiming both personal protection insurance benefits and uninsured motorist coverage. The circuit court held that the deceased was covered by the policy both for personal protection insurance and uninsured motorist benefits. The Court of Appeals affirmed in a published opinion.[2]

---

[1] As a relative residing in the same household, Brady could potentially obtain benefits under Elmer's policy. MCL 500.3114(1).

[2] 251 Mich App 476; 650 NW2d 428 (2002).

## II. Personal Protection Insurance Benefits

### A. Statutory Language

MCL 500.3113(b) precludes owners of uninsured vehicles from receiving personal protection insurance benefits:

> A person is not entitled to be paid personal protection insurance benefits for accidental bodily injury if at the time of the accident any of the following circumstances existed:
>
> * * *
>
> (b) The person was the owner or registrant of a motor vehicle . . . involved in the accident with respect to which the security required by section 3101 or 3103 was not in effect.

The key question presented is whether Brady Sies was the "owner" of the truck. That term is defined in MCL 500.3101(2)(g) as follows:

> (i) *A person renting a motor vehicle or having the use thereof, under a lease or otherwise, for a period that is greater than 30 days.*
>
> (ii) A person who holds legal title to a vehicle, other than a person engaged in the business of leasing motor vehicles who is the lessor of a motor vehicle pursuant to a lease providing for the use of the motor vehicle by the lessee for a period that is greater than 30 days.
>
> (iii) A person who has the immediate right of possession of a motor vehicle under an installment sale contract. [Emphasis added.]

### B. Standard of Review

This case involves the proper interpretation of MCL 500.3101(2)(g)(i). Issues of statutory interpretation are questions of law that we review de novo. *Oade v*

*Jackson Nat'l Life Ins Co*, 465 Mich 244, 250; 632 NW2d 126 (2001); *Donajkowski v Alpena Power Co*, 460 Mich 243, 248; 596 NW2d 574 (1999). In analyzing questions of statutory construction, our obligation is to determine the intent of the Legislature as expressed in the language of the statute. *Wickens v Oakwood Healthcare Sys*, 465 Mich 53, 60; 631 NW2d 686 (2001); *Farrington v Total Petroleum, Inc*, 442 Mich 201, 212; 501 NW2d 76 (1993).

### C. Court of Appeals Decision

The Court of Appeals read *Ardt v Titan Ins Co*, 233 Mich App 685; 593 NW2d 215 (1999), and *Chop v Zielinski*, 244 Mich App 677; 624 NW2d 539 (2001), as indicating that under subsection i, the person in question must *actually* have had use of the vehicle for thirty days or more. The Court declined to follow *Ringewold v Bos*, 200 Mich App 131; 503 NW2d 716 (1993). *Ringewold* involved MCL 257.401, the owner's liability section of the Michigan Vehicle Code. That statute has a definition of "owner" that is similar to MCL 500.3101(2)(g)(i).[3] The defendant in

---

[3] MCL 257.37 defines "owner" as:

> (a) *Any person*, firm, association, or corporation *renting a motor vehicle or having the exclusive use thereof, under a lease or otherwise, for a period that is greater than 30 days.*

4

*Ringewold* claimed that she was not the owner of the vehicle because she did not hold legal title and did not have possession of it for more than thirty days before the accident.[4]  The *Ringewold* Court held that MCL 257.401 did not require *actual* use of the vehicle for more than thirty days and that the defendant was the owner of the vehicle under these circumstances.

The panel in this case refused to follow *Ringewold,* not because of any material differences in the language of the two statutes, but because of the differing purposes of the Michigan Vehicle Code and the no-fault insurance act. It said that the former is intended to place liability on the person who has ultimate control of the vehicle.  By contrast, the goal of the no-fault insurance system is to assure that persons injured in motor-vehicle accidents receive prompt and adequate reparation for injuries.  The panel thus concluded that it was reasonable to construe the

(b)  Except as otherwise provided in section 401a, a person who holds the legal title of a vehicle.

(c) A person who has the immediate right of possession of a vehicle under an installment sale contract. [Emphasis added.]

[4] The plaintiff in *Ringewold* was injured when struck by a vehicle that had been purchased by the defendant's former husband for their daughter fifteen days before the accident.  He had paid the entire purchase price, but did not make arrangements to record the transfer of title.

similar language in a different manner because of the different statutory purposes.

The panel also noted the factual differences between the two cases. In *Ringewold*, the full purchase price had been paid and, although the title had not been transferred, the defendant had insured the vehicle and put on license plates from a previously owned vehicle. In the present case, the full price had not been paid, the title had not been delivered because the sale was not complete, and the seller's plates were retained. Thus, the panel concluded that this was not a case, like *Ringewold*, "where ownership had been transferred permanently." 200 Mich App 138.

### D. Analysis

We agree with the reasoning in the *Ringewold* decision, which construed the virtually identical language of MCL 257.37. As the *Ringewold* Court explained, it is not necessary that a person *actually* have used the vehicle for a thirty-day period before a finding may be made that the person is the owner. Rather, the focus must be on the nature of the person's right to use the vehicle.

Once again, MCL 500.3101(2)(g)(i) defines "owner" as "[a] person renting a motor vehicle or *having the use thereof* . . . for a period that is greater than 30 days." (Emphasis added.) Reading this language in the manner suggested by plaintiff requires substitution of the phrase

6

"having *used* the vehicle" for the phrase "having the use thereof."

Nothing in the plain language of MCL 500.3101(2)(g)(i) requires (1) that a person has at any time *actually used* the vehicle, or (2) that the person has *commenced* using the vehicle at least thirty days before the accident occurred. The statute merely contemplates a situation in which the person *is renting or using* a vehicle for a period that is greater than thirty days.

Accordingly, if the lease or other arrangement under which the person has use of the vehicle is such that the right of use will extend beyond thirty days, that person is the "owner" from the inception of the arrangement, regardless of whether a thirty-day period has expired. For example, in the case of a lease running longer than thirty days, the plain language of the statute would make that person an "owner" from the inception of the lease; the person's status would not change simply because of the passage of time.

In this case, the arrangement between the seller and the deceased was for a permanent transfer of ownership of the vehicle and it contemplated that the deceased would have exclusive use of the truck permanently. The fact that the accident occurred before the expiration of thirty days

does not affect the nature of the deceased's interest in the vehicle.

The Court of Appeals declined to follow *Ringewold* because that case involved the Michigan Vehicle Code rather than the no-fault statute. The Court reasoned that the differing purposes of those statutes permit giving different meaning to the identical language. We reject that view. The focus of statutory interpretation must be on the language used by the Legislature. The courts are not free to manipulate interpretations of statutes to accommodate their own views of the overall purpose of legislation. See *Hanson v Mecosta Co Rd Comm'rs*, 465 Mich 492, 504; 638 NW2d 396 (2002).

Like the Michigan Vehicle Code, MCL 500.3101(2)(g)(i) treats a person as an "owner" of a vehicle if the person rents or has the use of the vehicle for a period greater than thirty days. It is the nature of the right to use the vehicle—whether it is contemplated that the right to use the vehicle will remain in effect for more than thirty days—that is controlling, not the actual length of time that has elapsed.

In this case, the Court of Appeals noted that there were differences between the transactions in *Ringewold* and the present case. However, those details, regarding whether the full purchase price had been paid, etc., are

inconsequential. Despite those differences, the key fact remains the same. The arrangement under which Brady Sies obtained the vehicle contemplated that he would have the use of it for more than thirty days, thus bringing him within the statutory definition of "owner" under § 3101(2)(g)(i).[5]

---

[5] The Court of Appeals additionally rejected defendant's alternative argument that the decedent was "[a] person who has the immediate right of possession of a motor vehicle under an installment sale contract" and thus qualified as an "owner" under MCL 500.3101(2)(g)(iii). In light of our conclusion that the decedent was the owner of the truck under § 3101(2)(g)(i), it is not necessary to address this issue at length. However, we wish to note our disagreement with the Court of Appeals' analysis.

The panel looked to the Motor Vehicle Sales Finance Act (MVSFA), MCL 492.101 *et seq.*, and adopted its definition of "installment sale contract" ("a contract for the retail sale of a motor vehicle . . . under which part or all of the price is payable in 2 or more scheduled payments . . . "). See MCL 492.102(9). Accordingly, because the transaction between the decedent and Roach was not a retail sale or a commercial transaction and because there was no payment schedule, the panel concluded that § 3101(2)(g)(iii) was inapplicable.

We conclude that in addition to qualifying as an "owner" under § 3101(2)(g)(i), the decedent qualified as an "owner" under § 3101(2)(g)(iii). The MVSFA is inapposite, as it applies only to sellers who are "engaged in the business of selling, offering for sale, hiring, or leasing motor vehicles under installment sale contracts or a legal successor in interest to that person," not including isolated sales. MCL 492.102(4). Thus, the panel erred in importing into the no-fault act the MVSFA's definition of "installment sale contract."

The commonly understood meaning of the undefined phrase "installment sale contract" in § 3101(2)(g)(iii) would include the arrangement between the decedent and Roach. The phrase "installment sale contract" does not

### III. Uninsured Motorist Benefits

The second issue is whether uninsured motorist benefits under defendant's policy are available. The interpretation of an insurance contract is a question of law that we review de novo. *Henderson v State Farm Fire & Cas Co*, 460 Mich 348, 353; 596 NW2d 190 (1999). Uninsured motorist benefit clauses are construed without reference to the no-fault act because such insurance is not required under the act. *Rohlman v Hawkeye-Security Ins Co*, 442 Mich 520, 525; 502 NW2d 310 (1993).

The policy excludes coverage for injury sustained while the insured is occupying an uninsured motor vehicle that is "owned" by the insured:

---

require a writing; nor does it require a sale at retail. *Merriam Webster's Collegiate Dictionary* (10th ed) provides a typical definition of the term "installment": "One of the parts into which a debt is divided when payment is made at intervals." Moreover, Black's Law Dictionary (7th ed) defines the more specific term "installment contract" as "[a] contract requiring or authorizing the delivery of goods in separate lots, *or payments in separate increments, to be separately accepted*." Thus, there is no material difference whether the term is accorded its commonly understood meaning or is considered to be a term of art. The decedent had a contract for the purchase of the truck. The purchase price was payable in at least two installments. The decedent had the immediate right of possession of the truck pursuant to the sale contract. Under these circumstances, he qualified as one having the "immediate right of possession of a motor vehicle under an installment sale contract" and was thus an "owner" under § 3101(2)(g)(iii).

10

A. We do not provide Uninsured Motorists Coverage for "bodily injury" sustained:

1. By an "insured" while occupying, or when struck by, any motor vehicle that is owned by that "insured" which is not insured for this coverage under this policy.

Brady Sies was an "insured" because he was residing with his grandfather, the policyholder. The vehicle involved in the accident, however, was not covered by the policy, and coverage would thus be excluded if Brady "owned" the vehicle. The policy does not define the term "owner" or "owned." The Court of Appeals applied the same definition of the policy term "owned" as it had in construing the term "owner" in the no-fault statute: "Having found that the decedent was not the 'owner' of the vehicle under the no-fault act, we also find that he did not own the vehicle pursuant to the insurance policy." 251 Mich App 490.

The Court of Appeals erred in importing the statutory definition of "owner" into the policy language. There is nothing in the plain language of the policy supporting the application of the definition of "owner" in MCL 500.3101(2)(g) to this independent, nonstatutory coverage.

An insurance policy is enforced in accordance with its terms. Where a term is not defined in the policy, it is accorded its commonly understood meaning. *Allstate Ins Co v McCarn*, 466 Mich 277, 280; 645 NW2d 20 (2002). Reference

to dictionary definitions indicates that *possession*, *control,* and *dominion* are among the primary features of ownership. See, e.g., *Merriam Webster's Collegiate Dictionary* (10th ed, 1977) (defining "owned" as to "have or possess"); *Webster's Encyclopedic Unabridged Dictionary of the English Language* (Deluxe ed, 1994) (listing various definitions of "owned," such as "to acknowledge as one's own; recognized as having full claim, authority, power, dominion, etc."); *American Heritage Dictionary of the English Language* (3d ed, 1993) (defining —"own" as "[t]o have or possess" and "ownership" as "[l]egal right to the possession of a thing").

Brady Sies had possession and control of the vehicle, as well as dominion and authority over the vehicle, and, thus, would commonly be understood to have "owned" it at the time of the accident. The facts that the entire purchase price had not yet been paid and that the technical transfer of title had not yet occurred are not dispositive. Brady, who had paid part of the purchase price and taken control of the truck with the intention of permanently possessing it, "owned" the vehicle as that term would be understood in ordinary usage. Because Brady "owned" the

uninsured vehicle, uninsured motorist benefits are not recoverable under the policy.[6]

                                    IV

Accordingly, the judgments of the Court of Appeals and the Genesee Circuit Court are reversed, and we remand the case to the circuit court for entry of judgment for the defendant.

                              Maura D. Corrigan
                              Clifford W. Taylor
                              Robert P. Young, Jr.
                              Stephen J. Markman

---

[6] The dissent asserts that the term "owned," because it is undefined in the policy, must be construed against the drafter. We disagree. As we recently explained in *Klapp v United Ins Group Agency, Inc*, 468 Mich 459; 663 NW2d 447 (2003), the rule of *contra proferentem* is a rule of last resort that does not apply unless (1) there is a true ambiguity and (2) the parties' intent cannot be discerned. A word is not ambiguous merely because different dictionary definitions exist. *Koontz v Ameritech Services, Inc*, 466 Mich 304, 317-318; 645 NW2d 34 (2002). The word "owned" is not ambiguous as used in the policy. Rather, we conclude that the plain and ordinary meaning of that word would include circumstances, as in the case before us, in which an agreement for sale is reached, a portion of the purchase price is paid, and control and dominion of the vehicle are relinquished to the purchaser. Although our dissenting colleague correctly notes that the definition of "owner" in MCL 500.3101(2)(g) addresses concepts other than possession and control, he likewise acknowledges that the Court of Appeals "erred in transplanting the statutory definition" into the policy. See *post* at 4 n 2.

13

STATE OF MICHIGAN

SUPREME COURT

MARK TODD TWICHEL, Personal
Representative of the Estate
of BRADY S. SIES, Deceased,

    Plaintiff-Appellee,

v                                    No. 121822

MIC GENERAL INSURANCE
CORPORATION,

    Defendant-Appellant.

_____

CAVANAGH, J. (*concurring in part and dissenting in part*).

I concur in the majority's analysis and conclusion regarding the personal protection insurance benefits in this case. However, I respectfully dissent with respect to the analysis contained in part III of the majority's opinion and its conclusion regarding the unavailability of uninsured motorist benefits under defendant's policy. I would conclude that such benefits are available.

As the majority correctly notes, the term "owned" or "owner" is not defined in the policy.[1] In determining

_____

[1] The policy, however, does define such terms as "you," "your," "we," "us," "our," "bodily injury," "business," "family member," "occupying," "property damage," "trailer," and "insured." The term "your covered auto" is defined as:

    1. Any vehicle you own shown in the Declarations.

    2. Any of the following types of vehicles on the date you become the owner:

      a. a private passenger auto;

whether decedent was the "owner" under the terms of the policy, this Court examines the language of the policy and interprets its terms pursuant "to well-established Michigan principles of construction." *Allstate Ins Co v McCarn*, 466 Mich 277, 280; 645 NW2d 20 (2002). "An insurance policy must be enforced in accordance with its terms. If not defined in the policy, however, we will interpret the terms of the policy in accordance with their 'commonly used meaning.'" *Id*. (internal citations omitted).

The majority, pointing to various dictionary definitions, concludes that "possession, control, and dominion are among the primary features of ownership." *Ante* at 12. The commonly used meanings of "own" and "ownership," however, may contain additional features not contemplated by the majority. Unlike the majority, I cannot limit the definition of the word "own" and prefer to consider all of the features of ownership.

The common usage of a nonlegal term is to be found in a lay dictionary. *Sands Appliance Services, Inc v Wilson*, 463 Mich 231, 240-241; 615 NW2d 241 (2000). Referencing lay dictionary definitions indicates that ownership may entail more than possession, dominion, and control. See,

---

    b. a pickup or van that:

        (1)  has a Gross Vehicle Weight of less than 10,000 lbs.; and

        (2)  is not used for the delivery or transportation of goods and materials unless such use is:

            (a)  incidental to your "business" of installing, maintaining or repairing furnishings or equipment; or

            (b)  for farming or ranching; . . . .

e.g., *Webster's Third New International Dictionary, Unabridged* (1966) (defining "own" as "to have or hold as property or appurtenance: have a rightful title to whether legal or natural," "owner" as "one that has the legal or rightful title whether the possessor or not," and "ownership" as a "lawful claim or title"); *Webster's New Twentieth Century Unabridged Dictionary* (2d ed, 1983) (defining "owner" as "one who has the legal or rightful title, whether he is the possessor or not"); *The Oxford English Dictionary* (2d ed, v XI, 1991) (defining "owner" as "one who has the rightful claim or title to a thing [though he may not be in possession]").[2]   In short, the common

---

[2] These definitions are consistent with the definitions in Black's Law Dictionary (7th ed), which defines "own" as "[t]o have or possess as property; *to have legal title to*." Similarly, "owner" is defined as "[o]ne who has the right to possess, use, *and convey something*" and "ownership" is defined as "[t]he collection of rights allowing one to use and enjoy property, *including the right to convey it to others*." *Id*. (emphases added).

I agree with the majority that terms of the policy are construed independently of the statute and that the Court of Appeals erred in transplanting the statutory definition of "owner" into the policy.  However, the statutory definition of "owner" further illustrates the concept that "ownership" may involve more than the features cited by the majority under certain circumstances.  The statute defines "owner" as:

> (i) A person renting a motor vehicle or having the use thereof, under a lease or otherwise, for a period that is greater than 30 days.

> (ii) *A person who holds legal title to a vehicle*, other than a person engaged in the business of leasing motor vehicles who is the lessor of a motor vehicle pursuant to a lease providing for the use of the motor vehicle by the lessee for a period that is greater than 30 days.

features of "ownership" appear to involve more than mere possession, dominion, and control.

While it is clear that decedent possessed and controlled the vehicle, it is equally clear that decedent did not have title to the vehicle. Instead, title remained at all relevant times with Matthew Roach. As such, it is unclear whether decedent would be considered the "owner" of the vehicle under the common usage of that term and, consequently, the terms of the policy itself.

Applying another "well-established Michigan principle of construction," I would conclude that uninsured motorist benefits are available under the terms of the policy. To the extent the term "owner" is ambiguous in the policy, such ambiguity is strictly construed against the insurer in favor of coverage. *State Farm Mut Automobile Ins Co v Enterprise Leasing Co*, 452 Mich 25, 38-40; 549 NW2d 345 (1996). If "ownership" merely involves possession, dominion, and control, then decedent is an "owner" and coverage under the policy is unavailable. If "ownership" contemplates possessing legal title and the ability to convey such title to others, then decedent is not an "owner" and, thus, covered under the policy.

> If a fair reading of the entire contract of insurance leads one to understand that there is coverage under particular circumstances and another fair reading of it leads one to understand there is no coverage under the same circumstances the contract is ambiguous and should be construed against its drafter and in favor of coverage. [*Raska v Farm Bureau Mut Ins*

---

(iii) A person who has the immediate right of possession of a motor vehicle under an installment sale contract. [MCL 500.3101(2)(g) (emphasis added).]

4

*Co of Michigan*, 412 Mich 355, 362; 314 NW2d 440 (1982).]

I disagree with the majority's decision to construct a decision favorable to defendant, rather than construing the insurance contract against its drafter, as we are bound to do under our principles of construction. *Raska*, *supra* at 361-362; *Universal Underwriters Ins Co v Kneeland*, 464 Mich 491, 509-510; 628 NW2d 491 (2001) (CAVANAGH, J., dissenting). While defendant deemed it appropriate to define such terms as "you" and "we," it failed to define an essential term such as "owner." Accordingly, I dissent from the majority's conclusion that uninsured motorist benefits are unavailable under the terms of the policy. I would construe the insurance contract against its drafter and conclude that uninsured motorist benefits are available.

Michael F. Cavanagh
Elizabeth A. Weaver
Marilyn Kelly