## SCHWARE *v.* DERTHICK.

1. CONTRACTS—BUILDING—POSSESSION OF HOUSE—PAYMENT.
   Contract for construction of a house for plaintiff on a lot owned
   by defendants, which was silent as to matter of transfer of
   possession gave no right of possession to plaintiff until he
   had paid therefor.

2. SAME—BUILDING—BREACH OF CONTRACT—EVIDENCE.
   Defendant builder did not breach his contract with plaintiff
   for construction of house for plaintiff on lot owned by defend-
   ant and his wife merely by failing to show plaintiff construc-
   tion costs of another nearby house which defendant was
   building and which was to be duplicated in large part by
   house erected for plaintiff, where neither house was fully
   completed at time of alleged breach.

3. SAME—AFFIRMANCE—SPECIFIC PERFORMANCE.
   The making of an agreement as to installation of some racks
   in a closet after alleged breach of the contract by defendant
   and subsequent filing of bill for specific performance con-
   stituted an affirmance of the contract by plaintiff.

4. SAME—BREACH OF CONTRACT—FINDING OF TRIAL COURT—WEIGHT
   OF EVIDENCE.
   Trial court's finding that plaintiff was entitled to damages be-
   cause of defendant contractor's alleged breach of the con-
   tract for building a house for plaintiff *held,* against the clear
   weight of the evidence.

---

REFERENCES FOR POINTS IN HEADNOTES
[1] 9 Am Jur, Building and Construction Contracts §§ 18, 57; 55 Am
    Jur, Vendor and Purchaser § 385.
[2] 9 Am Jur, Building and Construction Contracts § 31.
[3] 9 Am Jur, Building and Construction Contracts § 52.
[5] 55 Am Jur, Vendor and Purchaser §§ 529, 573.
[6] 26 Am Jur, Husband and Wife §§ 172, 173.
[7] 14 Am Jur, Costs § 97.

5. VENDOR AND PURCHASER—RECOVERY OF DOWN PAYMENT—IMPROVEMENTS.

Plaintiff was entitled to recover down payment he had made on contract with defendant to construct a house on lot owned by defendant and his wife and cost of putting in tile and linoleum, where defendant has not asked for a money judgment, not given plaintiff a deed to the house nor shown a loss.

6. HUSBAND AND WIFE—JUDGMENT—RECOVERY OF DOWN PAYMENT.

Defendant wife is not liable to a judgment for moneys plaintiff had paid her husband as down payment on house the defendant husband had contracted to build for plaintiff.

7. COSTS—HUSBAND AND WIFE.

Costs are awarded defendant wife in action against her and her husband, where judgment for plaintiff is reversed as to her, but are awarded plaintiff against defendant husband upon affirmance of judgment for plaintiff as to him.

Appeal from Kalamazoo; Fox (Raymond W.), J. Submitted October 3, 1951. (Docket No. 17, Calendar No. 45,045.) Decided January 15, 1952.

Bill by Rudolph Schware against Robert Cleo Derthick and wife for specific performance. Case transferred to law side of court. Judgment for plaintiff. Defendants appeal. Reversed as to defendant wife. Affirmed as to defendant husband.

*David Davidoff,* for plaintiff.

*R. G. Goembel,* for defendants.

REID, J. This is an action at law in which plaintiff seeks to recover damages because of claimed breach by defendants of an agreement for construction of a house to be built by defendant Robert C. Derthick for plaintiff on a lot, 933 Southworth, owned by defendants. From a judgment for plaintiff for $1,207.89 with interest against both defendants, both defendants appeal.

. Plaintiff began the instant case on May 10, 1949, by filing a bill in chancery for the specific performance of the agreement to build the house for plaintiff and to deed the lot which the house is situated to plaintiff. Defendants answered on May 31, 1949, and denied a breach of the agreement, did not file a cross bill but prayed for other and further equitable relief beyond dismissal of bill with costs. Defendant Blanche Olive Derthick, wife of her codefendant, Robert C. Derthick, in the answer admits that she knew of the agreement to build the house and further says, "She now here agrees to accept the terms thereof." She claims she meant thereby only to bind her interest in the lot on which the house in question was built and that she accepted the terms which would require that the lot should be sold with the house as plaintiff claimed and the court found. She did not in the answer, nor otherwise, expressly say she would carry out the undertakings of her husband, to build the house, or return any moneys paid to her husband.

A stipulation was entered into, October 6, 1949, setting forth that the case be transferred to the law side of the court, that plaintiff should not be entitled to specific performance and his recovery, if any, should be limited only to damages arising out of the transactions set forth in the bill and that defendants may urge any matter, denial, recoupment or set-off which they may have to the claims of plaintiff.

The suit was under the stipulation by court order transferred to the law side of the court and tried by the court without a jury. Nina J. Boyle, who had been joined as a defendant because she holds a mortgage against the lot, 933 Southworth, in practical effect, ceased to be considered in the case further, when the specific performance was no longer sought.

Plaintiff and Robert C. Derthick, hereinafter re-

ferred to as defendant, had been acquainted for
several years and were on friendly terms. Plaintiff
was a young man engaged in the business of selling
venetian blinds. Defendant was a man of the age of
60 years, with some slight trouble in his hearing,
and had never gone to school. For the past 13 or
14 years he was engaged in building houses but not
on contract. His method of operation was to buy a
lot, build a house on it, and then sell it. His book-
keeping system consisted of keeping his bills repre-
senting the cost of building the house, and also, he
kept a tablet or book in which he would write down
the bills he paid.

Plaintiff and his wife looked over 2 houses, 1 of
which defendant had completed and sold; the other
house defendant was building at the time. Plaintiff
and wife liked the house which defendant had sold,
917 Southworth, referred to in exhibit B. On March
9, 1949, after some discussion, plaintiff who was at-
tending Western Michigan college and taking a pre-
law course wrote out a contract which he and defend-
ant signed, exhibit B, which is as follows:

"March 9, 1949
*"To whom it may concern:*
"This agreement entered into between Rudolph
Schware, hereinafter called the party of the first
part, and Robert Derthick, hereinafter called the
party of the second part, shall be binding on both.
"Party of the 1st part hereby gives the party of
the 2nd part the sum of $1,000 as a deposit toward
the building of a house on lot 18 & 19—933 South-
worth terrace, Kalamazoo, Michigan. This house
to be a duplicate of the house built by Mr. Derthick
at 917 Southworth terrace, with the following
changes.
"1. Gable ends to run north and south instead of
east and west.

"2. The hall to be shortened from 4 feet to 3 feet and the extra space to be added to the other bathroom and bedroom.

"3. Instead of a coal furnace, an oil furnace, to be selected by Mr. Schware will be used and instead of being in the center of the basement will be placed on one side to be determined at a later date by mutual agreement of both parties.

"4. The base price of the house to be built will be figured at $7,500.

"(a) Any cost in materials less than what it cost to build the house at 913 [917] Terrace court, will be deducted from the above sum of $7,500.

"(b) Any cost in materials over what it cost to build the house at 913 [917] Terrace court, will be added to the above sum of $7,500.

"5. A shower will be installed in the bathroom over the bath tub.

"6. Rafters will be cut to heel and point to provide more headspace than is now there at 917 Southworth terrace.

"7. Linoleum for the kitchen and bathroom to be selected by party of the 1st part.

"8. The paint colors in the house to be selected by the party of the 1st part.

"9. The upstairs to be finished off at a cost to be mutually agreed upon at a later date by both parties, the materials to be agreed upon by both parties and the cost to be added to the base price of $7,500.

"10. Upon completion of said house, party of the 1st part will pay party of the second part, balance due on the house, within 2 weeks.

"11. Celotex to be used as sheathing.

                        "(s) Rudolph Schware
"(s) Robert C. Derthick"

The foregoing exhibit B is denominated as exhibit A appended to the bill. Another exhibit A offered and received in evidence is an envelope on which were written some figures and statements from which exhibit B was drafted by plaintiff.

Defendant proceeded (in the fore part of March, 1949) with the construction and it was entirely to the satisfaction of plaintiff nearly completed on May 5, 1949, when the dispute arose that brought about the instant suit. The house was actually completed after the suit was begun.

It is clear that plaintiff came to the interview of May 5th, hereinafter mentioned, in an angry frame of mind because of the over-all estimated cost of the building and because he had been told he could not have possession of the house until he paid for it, which information was confirmed by defendant during the interview. The contract gave plaintiff no right to possession before payment, but demand for such possession is made in plaintiff's bill of complaint.

. On May 5, 1949, the parties were at defendants' house for the purpose of determining the cost, as near as could then be determined, of the materials in the house in question and of the variations in cost from 917 Southworth (the house that was copied). Defendant informed plaintiff the resulting price was about $9,000, as defendant claims, or $9,464.97, as plaintiff claims. Whichever was the figure named, plaintiff became angry and accused defendant of trying to make a sucker of him and after copying some figures shown him by defendant he left defendants' house in a huff. He does not testify that in the conversation of May 5th he claimed or even discussed that there had been an agreed-on price for 3 extras not contemplated by the original agreement (a garage, a breezeway and the finishing of the upstairs) of $1,200, and that therefore the total cost must be too high, though he afterwards claimed an agreement that $1,200 should be the price of the extras.

There is a dispute in the testimony as to just what bills defendant laid on the table before the

flareup occurred or afterwards during that day, May 5th, but it is clear that plaintiff did not at the time consider that defendant had breached the agreement because the parties met afterwards on the same day at the new house (933 Southworth), whereupon plaintiff instead of informing the defendant that he considered that defendant had breached the contract and that the contract was at an end, on the contrary, said he would furnish the material for some racks to be placed in a closet and asked defendant if he would put them in, to which defendant agreed, as to which conversation both defendant and plaintiff testify and agree.

Plaintiff claims that defendant refused on May 5th to show him the bills for construction of 917 Southworth, the house that was being copied. It is highly probable in view of all the circumstances that defendant's refusal to show plaintiff the bills, was caused by the fact that at that time all the bills for 917 Southworth were not available and those that were available were not separated from other bills and further by plaintiff's exhibition of anger and suddenly adopted hostility toward defendant over the approximate total price and over defendant's refusal to give plaintiff possession before payment. The new house was not then finished and plaintiff on May 5, 1949, did not have a strict right to demand an examination of the bills for 917 Southworth.

The court adopted plaintiff's claim that defendant's refusal on May 5th, to show plaintiff the bills in question, was a breach of the agreement, exhibit B, and that defendant thereby made it impossible for the parties to arrive at the amount over or under $7,500 which was provided for by their contract.

The contract, exhibit B, clearly implies that defendant had personal knowledge of the cost of building 917 Southworth and that information on that subject will be fairly available to both parties when

the construction of 933 Southworth is completed. The court's finding that defendant's refusal to produce the bills on the occasion in question, made it impossible for the parties to arrive at the price for 933 Southworth and that therefore defendant is liable as for a breach of the contract, is without foundation.

We must not overlook the fact that after the claimed breach by defendant, plaintiff on the same day, affirmed the contract by the agreement about installation of racks, above referred to, and that on May 10, 1949, 5 days after defendant's so-called breach, plaintiff again affirmed the contract by filing his bill for specific performance.

It is clear in this case that plaintiff himself violated the contract by his unlawful demand for possession of the house before payment, and by his nonpayment for the house in accordance with the contract.

The trial court's finding that plaintiff is entitled to damages because of defendant's alleged breach of the contract, is against the clear weight of the evidence. Plaintiff clearly lost his right, if he ever had any, to recover damages for such alleged breach.

Defendant did not file a cross-declaration, but in his answer defendant alleges that plaintiff breached the contract, which proposition therefore became in issue because the contrary was asserted by plaintiff. Defendant has not asked for a money judgment against plaintiff, nor given plaintiff a deed of the house and lot, 933 Southworth, owned by defendants. The evidence does not show a loss to defendant. In our opinion plaintiff is entitled to recover not only the down payment of $1,000, but also the sum of $207.89 representing the cost of putting tile and linoleum in the bathroom and kitchen.

On the subject of forfeiture of down payments, it is of interest to note *Watson* v. *Harrison,* 324 Mich 16, 21.

Defendant Blanche Olive Derthick's answer does not subject her to a judgment for return of moneys paid her husband. The judgment against Blanche Olive Derthick is reversed. Costs to defendant Blanche Olive Derthick.

The trial court erroneously based the judgment on the basis of award of damages to plaintiff for breach of contract.

The judgment against Robert Cleo Derthick is for the correct amount and is affirmed for the reasons stated in this opinion. Costs to plaintiff against defendant Robert Cleo Derthick.

NORTH, C. J., and BUSHNELL and BOYLES, JJ., concurred with REID, J.

DETHMERS, CARR, and SHARPE, JJ., concurred in the result.

BUTZEL, J., did not sit.