# STATE OF MICHIGAN

# COURT OF APPEALS

RAYMOND J. CAREY,

Plaintiff-Appellee,

v

FOLEY & LARDNER, LLP,

Defendant-Appellant.

UNPUBLISHED
August 9, 2016

No. 321207
Wayne Circuit Court
LC No. 13-013005-CK

ON RECONSIDERATION

Before: RONAYNE KRAUSE, P.J., and GLEICHER and STEPHENS, JJ.

PER CURIAM.

Defendant appeals by leave granted the denial of its motion for summary disposition of the majority of the contract and employment law claims of plaintiff. *Carey v Foley & Lardner, LLP*, unpublished order of the Court of Appeals, entered August 18, 2014 (Docket No. 321207). Plaintiff asserts that throughout his employment, defendant breached his contract by engaging in gender, race and age discrimination in determining his compensation. He further contends he was subject to retaliation by defendant for his complaints to defendant's representatives. Plaintiff alleges he was paid at lower rates than other partners who were younger, female and not of European descent despite his commensurate or better billing levels and generation of income for the partnership. We affirm in part and reverse in part.

## I. STANDARD OF REVIEW

This Court reviews de novo a trial court's decision on a motion for summary disposition. *Maple Grove Twp v Misteguay Creek Intercounty Drain Bd*, 298 Mich App 200, 206; 828 NW2d 459 (2012). In accordance with MCR 2.116(C)(7), a party may file a motion to dismiss a lawsuit when "[e]ntry of judgment, dismissal of the action, or other relief is appropriate because of . . . immunity granted by law [or] statute of limitations. . . ." "When considering a motion brought under MCR 2.116(C)(7), it is proper for this Court to review all the material submitted in support of, and in opposition to, the plaintiff's claim." *Bronson Methodist Hosp v Allstate Ins Co*, 286 Mich App 219, 222; 779 NW2d 304 (2009), amended 489 Mich 925 (2011) (citations omitted). "In determining whether a party is entitled to judgment as a matter of law pursuant to MCR 2.116(C)(7), a court must accept as true a plaintiff's well-pleaded factual allegations, affidavits,

-1-

or other documentary evidence and construe them in the plaintiff's favor." *Id*. at 222-223 (citations omitted).

"A motion under 'MCR 2.116(C)(8) tests the legal sufficiency of the claim on the pleadings alone to determine whether the plaintiff has stated a claim on which relief may be granted.' " *Maple Grove Twp*, 298 Mich App at 206 (citation omitted). A trial court's grant of summary disposition under MCR 2.116(C)(8) is deemed to be proper " 'if no factual development could justify the plaintiff's claim for relief.' " *Id*. (citation omitted).

A motion brought pursuant to MCR 2.116(C)(10) "tests the factual sufficiency of the complaint." *Cichewicz v Salesin*, 306 Mich App 14, 28; 854 NW2d 901 (2014). "We review a motion brought under MCR 2.116(C)(10) by considering the pleadings, admissions, and other evidence submitted by the parties in the light most favorable to the nonmoving party." *Latham v Barton Malow Co*, 480 Mich 105, 111; 746 NW2d 868 (2008). Summary disposition is appropriate when "there is no genuine issue as to any material fact, and the moving party is entitled to judgment or partial judgment as a matter of law." MCR 2.116(C)(10).

## II. BREACH OF CONTRACT CLAIMS

Defendant argues that the trial court erred by failing to find that plaintiff's claims for breach of his employment contract, promissory estoppel, unjust enrichment, and fraudulent misrepresentation were barred by the applicable statutes of limitation. Defendant asserts that plaintiff's claims involve the abrogated continuing wrong doctrine and, thus, should be precluded. Defendant further asserts that the existence of an express contract bars a certain number of plaintiff's claims.

## A. STATUTE OF LIMITATIONS

A six-year statute of limitations exists for breach of contract actions. MCL 600.5807(8). Similarly, claims of promissory estoppel and unjust enrichment are also subject to a six-year limitations period. See *Huhtala v Travelers Ins Co*, 401 Mich 118, 124-125; 257 NW2d 640 (1977); See also MCL 600.5813 ("All other personal actions shall be commenced within the period of 6 years after the claims accrue and not afterwards unless a different period is stated in the statutes."); MCL 600.5815 ("The prescribed period of limitations shall apply equally to all actions whether equitable or legal relief is sought...."). A "long line of Michigan cases [also apply] the six-year period of limitations to fraud actions." *Nat'l Sand, Inc v Nagel Constr, Inc*, 182 Mich App 327, 333-334; 451 NW2d 618 (1990). The six-year limitation period of MCL 600.5807(8) begins to run "when the promisor fails to perform under the contract." *Cordova Chem Co v Dep't of Natural Resources*, 212 Mich App 144, 153; 536 NW2d 860 (1995). In other words, "[f]or a breach of contract action, the limitations period generally begins to run on the date that the breach occurs." *Seyburn, Kahn, Ginn, Bess, Deitch and Serlin, PC v Bakshi*, 483 Mich 345, 355; 771 NW2d 411 (2009).

Plaintiff's contract required periodic calculations of compensation. Plaintiff argues that each allegedly deficient annual compensation calculation comprises a new or individual breach of the contract. In accordance with MCL 600.5827, a breach of contract claim accrues "at the time the wrong upon which the claim is based was done regardless of the time when damage

results." Our Supreme Court, in *Twichel v MIC Gen Ins Corp*, 469 Mich 524, 532 n 5; 676 NW2d 616 (2004) (emphasis deleted), quoting *Black's Law Dictionary* (7th ed), defined an installment contract as " '[a] contract requiring or authorizing the delivery of goods in separate lots, or payments in separate increments, to be separately accepted.' " Certain types of contracts that provide for regular or periodic payments have been deemed similar or analogous to installment contracts. *H J Tucker & Assoc, Inc v Allied Chucker & Engineering Co*, 234 Mich App 550, 562-563; 595 NW2d 176 (1999); *Adams v Detroit*, 232 Mich App 701, 704-705; 591 NW2d 67 (1998); *Harris v Allen Park*, 193 Mich App 103, 107; 483 NW2d 434 (1992). Under this type of contract, a separate and distinct breach of contract claim is recognized to accrue with each deficient payment. *H J Tucker*, 234 Mich App at 562-563. "[E]very periodic payment made that is alleged to be less than the amount due . . . constitutes a continuing breach of contract and the limitation period runs from the due date of each payment." *Harris*, 193 Mich App at 107; *H J Tucker*, 234 Mich App at 563. As such, each allegedly deficient compensation payment made by defendant to plaintiff constitutes a separate and distinct breach of the partnership agreement.

Defendant contends that plaintiff's claim is an improper attempt to use the "continuing wrong" doctrine, which was rejected in *Blazer Foods, Inc v Restaurant Props, Inc*, 259 Mich App 241, 246; 673 NW2d 805 (2003). Under the "continuing wrong" doctrine a claim based on a defendant's wrongful conduct will re-accrue each day that the wrongful conduct is continued, *id.* at 246, 248, and the statute of limitations will not initiate until the wrong is abated, *id.* at 246. In other words, continuous acts must be demonstrated, not ongoing harmful effects from an original completed act. *Id.* The "continuing wrong" doctrine has not, however, been applied in the context of a breach of contract claim. *Id.* at 251.

The trial court correctly divided plaintiff's breach of contract claims into two distinct periods: (a) those claims that arose more than six years before plaintiff's filing of a complaint and (b) claims that occurred within the six year period immediately preceding plaintiff's filing of a cause of action in this matter. As such, the trial court correctly granted partial summary disposition in accordance with MCR 2.116(C)(7).

## B. UNJUST ENRICHMENT

Plaintiff's claim for unjust enrichment should have been dismissed based on the existence of an express contract concerning the same subject matter. A claim for unjust enrichment is the equitable counterpart to the legal claim for a breach of contract. An equitable claim of unjust enrichment is premised on the theory that the law will imply a contract to prevent the unjust enrichment of another party. *Belle Isle Grill Corp v Detroit*, 256 Mich App 463, 478; 666 NW2d 271 (2003). A contract to preclude unjust enrichment will be implied "only if there is no express contract covering the same subject matter." *Id.* The parties' partnership agreement and the relevant compensation provisions constitute an express contract within the meaning of this rule. Thus, the court erred when it denied summary disposition on the unjust enrichment claims.

## C. FRAUDULENT MISREPRESENTATION AND PROMISSORY ESTOPPEL

Plaintiff also raised claims of fraudulent misrepresentation and promissory estoppel indicating defendant made promises or false representations to induce his entry into the

agreement with defendant and regarding his compensation under the agreement. The statute of limitations for a fraud claim begins to run when a plaintiff either is aware or should have been aware of an injury due to the fraudulent conduct. MCL 600.5827; *Moll v Abbott Laboratories*, 444 Mich 1, 17-18; 506 NW2d 816 (1993). This Court applies an objective standard when reviewing when a plaintiff discovered or should have discovered an injury. *Moll*, 444 Mich at 17-18.

Plaintiff's complaint lists nine promises and representations that were allegedly made by defendant to induce plaintiff to enter into an agreement of employment with defendant. We have created the chart below, identifying each claimed promise and representation and when a claim began to accrue for each.

| Promises / Misrepresentations | Plaintiff discovered the misrep | Plaintiff should have discovered the misrep | Plaintiff complained to Defendant |
|---|---|---|---|
| Plaintiff would at all times be treated as a full partner of defendant | Feb 1, 2001 (Complaint, ¶ 50, p. 15) | | |
| Plaintiff would be paid the guaranteed, minimum monthly and annual compensation | Late Feb or early March 2003 (Complaint, ¶ 69, p. 22) | Feb 1, 2002 | Before late Feb or early March 2003 (Complaint, ¶ 70, p. 22) |
| Plaintiff's monthly and annual compensation would annually increase based on plaintiff's productivity | Feb 1, 2001 (Complaint, ¶ 63, p. 20) | | |
| Plaintiff's productivity would be measured by hours recorded by plaintiff and billed by defendant to clients for professional services provided by plaintiff to the clients as a member of defendant firm and annual revenue realized by defendant from client payment of fees charged by defendant for professional services provided by plaintiff and/or for which plaintiff was entitled to billing and/or supervisory credit | February 28, 2005 (Complaint, ¶¶ 116-117, pp. 42-43) | Feb 1, 2002 | |
| Plaintiff would receive full billing credit for all clients and client matters procured by him for full supervisory credit for all client matters for which he provided legal representation whether or not he procured the client or client matter | Feb 1, 2001 (Complaint, ¶ 63, p. 20) | | Before Feb 1, 2002 (Complaint, ¶ 67, p. 21) |
| Neither defendant nor partners of defendant would interfere with then extant and prospective client relationships procured by plaintiff | Feb 1, 2001 (Complaint, ¶ 60, p. 20) | | |

| | | | |
|---|---|---|---|
| In all other respects plaintiff would be treated the same as other founding partners of the Detroit office and other partners of defendant relative to compensation, benefits and all other terms and conditions of employment, including but not limited to, billing and supervisory credit for clients and client matters procured by plaintiff as a member of the defendant law firm | February 28, 2005 (Complaint, ¶¶ 116-117, pp. 42-43) | Feb 1, 2002 | |
| In all other respects plaintiff would be treated without regard to his or others' gender, race or age relative to compensation, benefits and all other terms and conditions of employment, including but not limited to, billing and supervisory credit for clients and client matter procured by plaintiff as a member of the defendant law firm | February 28, 2005 (Complaint, ¶ ¶ 116, 118, 119 pp. 42, 43) | Feb 1, 2002 | |
| Plaintiff's annual compensation would be the greater of 60% of amounts annually billed by defendant for professional services provided by plaintiff or a reasonable, equitably fair higher percentage of annual revenue realized by defendant due to plaintiff's productivity and from client payment of fees charged by defendant for professional services provided by plaintiff and/or for which plaintiff was entitled to billing and/or supervisory credit, which defendant was able to set and collect at substantially higher hourly rates than that charged for most other similarly situated Detroit and other partners of defendant because of plaintiff's expertise and experience and relationships he maintained with clients that he procured | February 28, 2005 (Complaint, ¶ ¶ 116-117, pp. 42-43) | Feb 1, 2002 | |

The admissions of plaintiff in the complaint, coupled with the objective reality that the promises were purportedly breached by a date certain, allow us to surmise that the latest accrual of any alleged misrepresentation or fraud was February 1, 2008, thus the statute of limitations has run as to all such claims.

While a claim of promissory estoppel is grounded in contract law, *Huhtala*, 401 Mich at 124-125, it comprises an equitable doctrine, *Martin v East Lansing Sch Dist*, 193 Mich App 166, 178; 483 NW2d 656 (1992). This Court has explained:

> The elements of a promissory estoppel claim consist of (1) a promise (2) that the promisor should reasonably have expected to induce action of a definite and substantial character on the part of the promisee and (3) that, in fact, produced reliance or forbearance of that nature (4) in circumstances requiring enforcement of the promise if injustice is to be avoided. A promise is a manifestation of intention to act or refrain from acting in a specific way, so made as to justify a promisee in understanding that a commitment has been made. The promise must be definite and clear, and the reliance on it must be reasonable. [*Zaremba Equip, Inc v Harco Nat'l Ins Co*, 280 Mich App 16, 41; 761 NW2d 151 (2008) (internal citations and quotation marks omitted).]

Plaintiff has alleged that defendant made promises that induced him to enter into an agreement with defendant in 2000. His complaint, also acknowledged that he was aware that those

promises were not fulfilled as of October 2001. Thus, his claim as to the original promises made to him accrued as of that date and was barred by the statute of limitation in October 2006. Plaintiff asserts that each year, when defendant failed to calculate and pay his compensation, a new or renewed promise upon which separate promissory estoppel claims could be prosecuted arose. This mirrors his contract accrual argument with which we agree. However, alternative and concurrent counts for breach of contract and promissory estoppel cannot be brought when an enforceable contract exists as it does here where the performance that constitutes the consideration for the contract is the same performance that demonstrates detrimental reliance in a promissory estoppel claim. *Gen Aviation, Inc v Cessna Aircraft Co*, 915 F2d 1038, 1042 (CA 6, 1990). In other words, "[p]romissory estoppel is not a doctrine designed to give a party to a negotiated commercial bargain a second bite at the apple in the event it fails to prove breach of contract." *Walker v KFC Corp*, 728 F2d 1215, 1220 (CA 9, 1984). Therefore, plaintiff is precluded from pursuing simultaneous claims of promissory estoppel.

## D. COLLATERAL ESTOPPEL

Defendant next asserts that plaintiff is collaterally estopped from pursuing his breach of contract claims premised on the assertion of employment discrimination under Michigan's Elliott-Larsen Civil Rights Act [ELCRA], MCL 37.2101 *et seq.*, due to the federal district court's factual determination that defendant's reasons for its actions were not pretextual. We agree.

This Court reviews de novo the application of collateral estoppel as a question of law. *Estes v Titus*, 481 Mich 573, 578-579; 751 NW2d 493 (2008).

"Generally, for collateral estoppel to apply three elements must be satisfied: (1) a question of fact essential to the judgment must have been actually litigated and determined by a valid and final judgment; (2) the same parties must have had a full and fair opportunity to litigate the issue; and (3) there must be mutuality of estoppel." *Monat v State Farm Ins Co*, 469 Mich 679, 682-684; 677 NW2d 843 (2004) (internal citations and quotation marks omitted). Mutuality, for purposes of estoppel, exists when the litigant asserting collateral estoppel would have been bound by the previous litigation, had the judgment gone against him. *Id*. at 684-685. Such is the case here.

The federal court reviewed the circumstances pled in this case to determine if the plaintiff was a member of a protected class due to gender, age and race. Those considerations are identical to the requirement for protected class membership under MCL 37.2202.

In accordance with MCL 37.2202:

(1) An employer shall not do any of the following:

> (a) Fail or refuse to hire or recruit, discharge, or otherwise discriminate against an individual with respect to employment, compensation, or a term, condition, or privilege of employment, because of religion, race, color, national origin, age, sex, height, weight, or marital status.

The federal court found that plaintiff met that burden of going forward.

The federal court ruled that plaintiff failed to present evidence that he was subject to adverse employment actions due to membership in any protected class. "The ultimate question in every employment discrimination case involving a claim of disparate treatment is whether the plaintiff was the victim of intentional discrimination." *Reeves v Sanderson Plumbing Prod, Inc*, 530 US 133, 153; 120 S Ct 2097; 147 L Ed 2d 105 (2000). Direct evidence, indirect evidence or circumstantial evidence can be used to prove discriminatory treatment. *Sniecinski v Blue Cross and Blue Shield of Mich*, 469 Mich 124, 132; 666 NW2d 186 (2003). "Direct evidence" has been defined as "evidence which, if believed, requires the conclusion that unlawful discrimination was at least a motivating factor in the employer's actions." *Hazle v Ford Motor Co*, 464 Mich 456, 462; 628 NW2d 515 (2001), quoting *Jacklyn v Schering Plough Healthcare Prod Sales Corp*, 176 F3d 921, 926 (CA 6, 1999).

In *Venable v Gen Motors Corp*, 253 Mich App 473, 476-477; 656 NW2d 188 (2002) (citations and footnotes omitted), to establish a rebuttable prima facie case of discrimination, this Court explained:

> [O]ur Supreme Court adapted the *McDonnell Douglas* framework to the Michigan Civil Rights Act. This was done to accommodate additional types of discrimination claims-including employment discrimination based on sex and age-and to accommodate other "adverse employment action[s]." The framework, long used by courts of this state, requires a showing that plaintiff was "(1) a member of a protected class, (2) subject to an adverse employment action, (3) qualified for the position, and that (4) others, similarly situated and outside the protected class, were unaffected by the employer's adverse conduct."

Plaintiff contends that as an older, white male he was subject to disparate treatment in compensation when compared to younger, female and non-Caucasian employees of defendant. Under ELCRA, the plaintiff has a similar burden. The only direct evidence alleged in the federal court or here is the purported differential in compensation alleged by plaintiff.

Focusing on "female comparators," the federal district court evaluated plaintiff's Equal Pay Act, 29 USC 206(d), claim and rejected the claim premised, in part, on plaintiff's inability to demonstrate "that each of the proposed comparators perform job duties that are substantially equal to his." Specifically, the federal court found that "a cursory review of the profiles of Plaintiff and the proposed comparators suggests that their legal practices engage different skills, knowledge, expertise, and tasks." The federal court found that plaintiff failed to meet his "burden of demonstrating that he and his comparators perform substantially equal work." The federal court made the factual determination that "in some cases the proposed comparator did not earn *more* than Plaintiff on an annual basis," and that any alleged discrepancy set forth by plaintiff was attributable to his "attempting to impose a formula that does not reflect how Defendant determines compensation."

Under ELCRA, a plaintiff who has made a prima facie claim where the defendant offers a purported business reason for the employment action must provide proof of pretext. Again the federal court examined the same issue and found that, defendant was able to demonstrate to the satisfaction of the federal district court the reasons for higher compensation to a specific female attorney "based upon various gender-neutral factors," resulting in defendant having "established

the affirmative defense that its compensation decisions were based upon 'any other factor other than sex.' " The federal district court determined that defendant's reasons or explanations for any differential in compensation were not pretextual, stating: "There is no evidence that these factors are shams or are used by the firm merely to mask sex discrimination." The federal district court clearly rejected plaintiff's contention that his compensation by defendant was discriminatory. Specifically:

> Plaintiff disagrees with Defendant's assessment of his performance . . . . Plaintiff's evidence in this regard is largely based upon his opinion of others' qualifications, contributions to firm, and/or performance. Although Plaintiff may disagree with Defendant's justifications for any perceived pay disparity or feel that Defendant's method of determining compensation is unfair, Plaintiff has not set forth facts that raise an inference that any such differential was based upon gender or that Defendant's reasoning is pretextual. Indeed, a review of partner compensation for Defendant's Detroit office reveals that the highest-paid partners (as well as the decision-makers regarding compensation) are overwhelmingly white men.

The federal court also rejected plaintiff's reverse sex and race discrimination claims under Title VII regarding his compensation. The federal court found:

> Plaintiff has failed to muster evidence that Defendant discriminates against whites and/or men, and thus cannot establish a prima facie case of reverse discrimination under Title VII. . . . Plaintiff has not presented facts raising such an inference, with respect to gender or race.

Similarly, the federal court rejected plaintiff's age discrimination claim based on the failure to present "evidence of intentional age discrimination with respect to his pay," noting that even if it were assumed that plaintiff was "treated less favorably than younger attorneys," he had failed to "set forth facts raising an inference that Defendant's reasons for doing so were pretextual." The ruling of the federal district court was affirmed by the federal appellate court finding plaintiff "failed to provide evidence that any of the partners to whom he compared himself performed substantially equal work," thereby rendering plaintiff unable to "establish a genuine factual dispute regarding at least one element of a prima face case of discrimination." *Carey v Foley & Lardner, LLP*, 577 F Appx 573, 574-575 (CA 6, 2014). Based on the federal district court's finding that plaintiff had failed to come forward with direct evidence of pay disparity premised on sex, age or race, collateral estoppel is applicable. *Monat*, 469 Mich at 682-684.

In examining plaintiff's claims this Court would examine whether the employees whom plaintiff claimed were treated differently than he were in fact comparable. The federal district court ruled that plaintiff failed to meet his burden of establishing that the individuals identified were properly comparable and, in addition, that plaintiff had received higher compensation than some of the identified individuals used for comparison. Further, even if plaintiff had been able to establish a prima facie case of discrimination under the applicable framework, he could not survive the burden shifting analysis that comprises the next step in evaluating his claim. The federal district court explicitly found that the reasons or justifications provided by defendant for

any disparity in compensation were legitimate, nondiscriminatory and not pretextual. As such, plaintiff's claims under the ELCRA are precluded based on collateral estoppel.

Plaintiff has also, however, in the state court alleged a claim of unlawful retaliation premised on his assertion that his complaints to defendant's management regarding his disparate compensation resulted in a reduction in his compensation. Specifically, plaintiff claimed:

> Defendant through its Management Committee and other agents treated Plaintiff differently than similarly situated younger partners with respect to compensation during each of its fiscal years since and beginning with Defendant's 2001 fiscal year because of his complaints.

Based on plaintiff's amended pleading, his complaints to defendant regarding his alleged discriminatory treatment occurred yearly, "each time he was notified of his annual compensation for since [sic] and beginning with defendant's 2001 fiscal year."

To establish a prima facie case of retaliation a plaintiff must demonstrate:

> "(1) that he engaged in a protected activity; (2) that this was known by the defendant; (3) that the defendant took an employment action adverse to the plaintiff; and (4) that there was a causal connection between the protected activity and the adverse employment action." [*Garg v Macomb Co Community Mental Health Servs*, 472 Mich 263, 273; 696 NW2d 646 (2005), amended 473 Mich 1205 (2005), quoting *DeFlaviis v Lord & Taylor, Inc*, 223 Mich App 432, 436; 566 NW2d 661 (1997).]

"To establish causation, the plaintiff must show that his participation in activity protected by the CRA [Civil Rights Act] was a 'significant factor' in the employer's adverse employment action, not just that there was a causal link between the two." *Barrett v Kirtland Comm College*, 245 Mich App 306, 315; 628 NW2d 63 (2001). In other words, to support a claim of retaliation, "[t]he employee's charge must clearly convey to an objective employer that the employee is raising the specter of a claim of unlawful discrimination pursuant to the [EL]CRA." *Id*. at 319. If the evidence demonstrates only that the plaintiff was simply asserting "generic, non-[discriminatory]-based complaints regarding working conditions," a claim for retaliation has not been established. *Id*. at 319-320. This plaintiff, however, pleads that his complaints were specific and concerned ELCRA issues.

As a preliminary matter, this cause of action was not addressed by the federal court and, therefore, is not collaterally estopped. Defendant argues that plaintiff cannot establish the causal link between the complaints and the subsequent years' compensation decisions. We agree that expiration of an extended period between a plaintiff's participation in a protected activity and the adverse employment action may preclude a finding that the engagement in a protected activity comprised a significant factor in the adverse employment action. See *Aho v Dep't of Corrections*, 263 Mich App 281, 291-292; 688 NW2d 104 (2004). "Courts have consistently held that a lengthy period between the protected activity and the adverse employment action precludes a nexus between the two events." *Id.* at 291. However, what constitutes a lengthy

period is case specific. Since compensation was a yearly decision, we cannot say as a matter of law that time alone bars this cause of action.

## E.  INTEGRATION CLAUSE

Defendant also asserts that plaintiff's breach of contract claim should have been dismissed based on the existence of an integration clause within the Partnership Agreement belying any different or ancillary agreements between the parties. Defendant further contends that the breach of contract claim should have been dismissed based on the prior determinations of the federal court that plaintiff had failed to demonstrate that defendant's yearly compensation calculations were pretextual or were not in conformance with the agreement and, therefore, could not be construed to be arbitrary or done in bad faith.

The parties' partnership agreement contains an integration clause. Plaintiff implicitly suggests that the contract is voidable based on his allegations that he was induced by fraud to enter into the contract and, later, coerced into signing the agreement for his full partner position without a complete disclosure of the contract terms. Specifically, plaintiff contends he was forced to enter into an agreement with defendant in 2000 because defendant had jeopardized plaintiff's relationship with his prior employer and that defendant made false promises to entice plaintiff's entry into the agreement. He further contends that he was forced by defendant to sign the partnership agreement in 2004, without having been provided a full copy of the agreement, thereby lacking a "meeting of the minds" to establish an enforceable contract.

In general, a party breaches a contract if it fails to perform a required promise, obligation or duty required by the contract. See *Schware v Derthick*, 332 Mich 357, 364-365; 51 NW2d 305 (1952). In this contract, defendant promises to compensate plaintiff in the "sole" or "absolute discretion" of an identified Committee. There is no language in the agreement that entitles plaintiff to a specified level of compensation or that the amount of compensation be determined in the manner preferred or advocated by plaintiff. As such, plaintiff has failed to establish a breach of the agreement by defendant based on the express terms of the partnership agreement. Notably, plaintiff does not rely on or identify any specific provision of the contract as the basis for his breach of contract claim. All of his allegations pertaining to breach of contract reference either fraud by defendant in inducing his entry into the contract or discriminatory treatment in determining his compensation.

Plaintiff's suggestion that defendant has failed to fulfill promises made to induce plaintiff's entry into the Agreement are without merit, in part, premised on the existence of the integration clause. When parties to a contract explicitly include within the contract a provision indicating that the contract is a full and complete integration of their agreement, courts have given such an expressed declaration full effect. *UAW-GM Human Resource Ctr v KSL Recreation Corp*, 228 Mich App 486, 493-499; 579 NW2d 411 (1998).

In this instance, however, plaintiff has alleged fraud, which can render "a contract voidable at the instance of the innocent party." *Id.* at 503 (citation omitted). But, "in the context of an integration clause . . . only certain types of fraud would vitiate the contract." *Id.* Specifically:

[W]hile parol evidence is generally admissible to prove fraud, fraud that relates solely to an oral agreement that was nullified by a valid merger clause would have no effect on the validity of the contract. Thus, when a contract contains a valid merger clause, the only fraud that could vitiate the contract is fraud that would invalidate the merger clause itself, i.e., fraud relating to the merger clause or fraud that invalidates the entire contract including the merger clause. [*Id.*]

To the extent that plaintiff contends that the terms of the written agreement are different from promises made by defendant before the agreement was reduced to a writing, his claim cannot be sustained premised on the existence of the integration clause. A sustainable claim of fraud requires the demonstration of a reasonable reliance on a misrepresented fact. *Barclae v Zarb*, 300 Mich App 455, 482; 834 NW2d 100 (2013). A party's reliance on oral promises or representations made before entering into a fully integrated written contract is deemed to be per se unreasonable. *UAW-GM*, 228 Mich App at 504.

Further, plaintiff's argument that he was coerced into signing an agreement without full disclosure of its terms is somewhat disingenuous given plaintiff's profession as an attorney, particularly in his areas of practice, and the length of the time the parties have continued to perform under the contractual agreement. As noted, defendant's misrepresentations and coercive actions are alleged to have occurred in 2001 and early 2004. Based on plaintiff's filing of his complaint in 2011, his claims are precluded by the applicable statute of limitations. *Nat'l Sand, Inc*, 182 Mich App at 333-334. Plaintiff's claim that he signed an agreement without having access to, or defendant's provision of, all of the contract terms is unavailing as "[t]he stability of written instruments demands that a person who executes one shall know its contents or be chargeable with such knowledge." *Christy v Kelly*, 198 Mich App 215, 217; 497 NW2d 194 (1992), quoting *Sponseller v Kimball*, 246 Mich 255, 260; 224 NW 359 (1929). Thus, "[i]t is well established that a person cannot avoid a written contract on the ground that he did not attend to its terms, did not read it, supposed it was different in its terms, or that he believed it to be a matter of mere form." *Rowady v K Mart Corp*, 170 Mich App 54, 60; 428 NW2d 22 (1988). Specifically, "a person who signs and executes an instrument without inquiring as to its contents cannot have the instrument set aside on the ground of ignorance of the contents." *Christensen v Christensen*, 126 Mich App 640, 645; 337 NW2d 611 (1983).

Plaintiff also suggests that defendant fraudulently induced his entry into their contract by misrepresenting future actions. "Fraud in the inducement occurs where a party materially misrepresents future conduct under circumstances in which the assertions may reasonably be expected to be relied upon and are relied upon. Fraud in the inducement to enter a contract renders the contract voidable at the option of the defrauded party." *Samuel D Begola Servs, Inc v Wild Bros*, 210 Mich App 636, 639-640; 534 NW2d 217 (1995) (internal citations omitted). To establish fraud in the inducement, it must be shown that

"(1) the defendant made a material representation; (2) the representation was false; (3) when the defendant made the representation, the defendant knew that is was false, or made it recklessly, without knowledge of its truth and as a positive assertion; (4) the defendant made the representation with the intention that the plaintiff would act upon it; (5) the plaintiff acted in reliance upon it; and (6) the

-11-

plaintiff suffered damage." [*Belle Isle Grill Corp*, 256 Mich App at 477 (citation omitted).]

Even assuming that fraud occurred and plaintiff's reliance on the alleged misrepresentations was reasonable there exists, however, a commensurate responsibility that " 'a person . . . who has been defrauded, must act promptly; and, if he would repudiate the contract, he must do nothing in affirmance of it after ascertaining the facts.' " *Blackburne & Brown Mtg Co v Ziomek*, 264 Mich App 615, 628; 692 NW2d 388 (2004) (citations omitted). In this instance, the alleged fraud and coercion occurred in 2001, yet plaintiff delayed until 2011 to file a lawsuit despite his acknowledgement that he was aware that defendant was not abiding by their alleged agreement since 2001.

## F. GOOD FAITH AND FAIR DEALING

To the extent plaintiff suggests his breach of contract claim was not subject to dismissal based on his demonstration of bad faith and arbitrary conduct by defendant, this assertion is indiscernible from his claims of fraud and discrimination. The term "bad faith" is defined in *Black's Law Dictionary* (10th ed) as "[d]ishonesty of belief, purpose, or motive." The federal court rejected plaintiff's contentions of discrimination having found defendant's explanation for its compensation decisions to be neither discriminatory nor pretextual. The federal court's determination is, thus, contrary to any suggestion of bad faith. "Arbitrary" is defined as "[d]epending on individual discretion; of, relating to, or involving a determination made without consideration of or regard for facts, circumstances, fixed rules, or procedures." *Id.* The Partnership Agreement permits the designated committee to determine individual or final distributions "in its sole discretion" or "absolute discretion." "Where a party to a contract makes the manner of its performance a matter of its own discretion, the law does not hesitate to imply the proviso that such discretion be exercised honestly and in good faith." *Ferrell v Vic Tanny Intern, Inc*, 137 Mich App 238, 243; 357 NW2d 669 (1984) (citations omitted). However, as explained in *Barber v SMH, Inc*, 202 Mich App 366, 372-373; 509 NW2d 791 (1993), "this Court has refused to recognize a cause of action for breach of an implied covenant of good faith and fair dealing in the employment context." Even if applicable, any implied "good faith" requirement imposed was satisfied by the federal district court's determination that defendant's explanations for plaintiff's compensation were neither discriminatory nor pretextual based on its exploration of the factors and methods used by defendant in determining individual compensation.

## III. AMENDED COMPLAINT

Finally, defendant contends the trial court erred in failing to strike plaintiff's amended complaint as violative of the Michigan Rules of Court and futility. This Court reviews for an abuse of discretion the trial court's decision to strike a pleading. *Belle Isle Grill Corp*, 256 Mich App at 469. The interpretation of a court rule presents an issue of law that this Court reviews de novo. *Acorn Inv Co v Mich Basic Prop Ins Ass'n*, 495 Mich 338, 348; 852 NW2d 22 (2014); *Muci v State Farm Mut Auto Ins Co*, 478 Mich 178, 187; 732 NW2d 88 (2007). "A court by definition abuses its discretion when it makes an error of law." *Kidder v Ptacin*, 284 Mich App 166, 170; 771 NW2d 806 (2009) (citation and quotation marks omitted).

When construing a court rule, the legal principles governing the interpretation and application of statutes are applicable. *In re KH*, 469 Mich 621, 628; 677 NW2d 800 (2004). The objective of the judiciary when interpreting a statute is to discern and give effect to the intent of the Legislature. *Whitman v City of Burton*, 493 Mich 303, 311; 831 NW2d 223 (2013). The most reliable evidence of the Legislature's intent is deemed to be the language of the statute. *Id*. "When construing statutory language, [the court] must read the statute as a whole and in its grammatical context, giving each and every word its plain and ordinary meaning unless otherwise defined." *In re Receivership of 11910 South Francis Rd*, 492 Mich 208, 222; 821 NW2d 503 (2012). Effect is to be given to every word, phrase, and clause within the statute, and the court is to avoid a construction that would render part of the statute surplusage or nugatory. *Johnson v Recca*, 492 Mich 169, 177; 821 NW2d 520 (2012). "If the language of a statute is clear and unambiguous, the statute must be enforced as written and no further judicial construction is permitted." *Whitman*, 493 Mich at 311.

MCR 2.118 provides, in pertinent part:

(A) Amendments.

(1) A party may amend a pleading once as a matter of course within 14 days after being served with a responsive pleading by an adverse party, or within 14 days after serving the pleading if it does not require a responsive pleading.

(2) Except as provided in subrule (A)(1), a party may amend a pleading only by leave of the court or by written consent of the adverse party. Leave shall be freely given when justice so requires.

Plaintiff served his complaint on defendant on December 27, 2013. Rather than filing an answer to the complaint, defendant elected to file a motion for summary disposition on January 16, 2014. While the motion was pending, plaintiff filed an amended complaint, adding a claim for retaliation, on January 31, 2014.

A motion for summary disposition is not considered a responsive pleading. MCR 2.110(A); *City of Huntington Woods v Ajax Paving Indus, Inc*, 179 Mich App 600, 601; 446 NW2d 331 (1989). In accordance with MCR 2.110(A), a "pleading" includes only a complaint, a cross-complaint, a counterclaim, a third-party complaint, an answer to any of the former, and a reply to an answer. MCR 2.110(A) specifically states, "[n]o other form of pleading is allowed." Because defendant never filed a responsive pleading to plaintiff's complaint, but only a motion for summary disposition, plaintiff had the right to file an amended complaint as a matter of course under MCR 2.118(A)(1). As explained within the commentary provided by authors Dean and Longhofer in Michigan Court Rules Practice (4th ed), § 2118.2, p 552:

Since the time allowed for an amendment as of right is limited to 14 days after service of a responsive "pleading," it is important to note that the term "pleading" is defined under MCR 2.110(A) to include only complaints, cross-claims, counterclaims, third-party complaints, an answer to any of these, and a reply to an answer. The list does not include, for example, a motion for summary disposition, under MCR 2.116, or a motion to strike or for a more definite

statement under MCR 2.115. A party may therefore appropriately reply to a motion under either rule with an amended pleading designed to cure the defect revealed by the motion (assuming a responsive pleading has not also been filed and served more than 14 days before the proposed amendment).

As such, the trial court did not err in determining that the timeframes of MCR 2.118 did not preclude plaintiff's filing of an amended complaint.

Leave to amend a pleading should be freely granted if justice requires. MCR 2.118(A)(2); *Hakari v Ski Brule, Inc*, 230 Mich App 352, 355; 584 NW2d 345 (1998).

However, leave to amend a complaint may be denied for particularized reasons, such as undue delay, bad faith, or dilatory motive on the movant's part, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party, or where amendment would be futile. "An amendment is futile where, ignoring the substantive merits of the claim, it is legally insufficient on its face." [*Id.* (citations omitted).]

Plaintiff's retaliation claim is not futile. The retaliation claim added to plaintiff's complaint alleged that he complained to defendant yearly, in conjunction with his receipt of notification of his compensation, that he was dissatisfied with the amount received and attributed the perceived disparity as being attributable to age discrimination. Because we find that this is a jury question, the amended complaint should be allowed. Defendant however, is not precluded from challenging plaintiff's retaliation claim by timely filing a motion for summary disposition with the trial court.

Affirmed in part, reversed in part and remanded to the trial court for further action consistent with this opinion. We do not retain jurisdiction.

/s/ Amy Ronayne Krause
/s/ Elizabeth L. Gleicher
/s/ Cynthia Diane Stephens