NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 05a0643n.06
Filed: August 1, 2005

No. 04-1755

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

| | | |
|---|---|---|
| **AGK HOLDINGS, INC.,** | ) | |
| | ) | ON APPEAL FROM THE |
| *Plaintiff-Appellant,* | ) | UNITED STATES DISTRICT |
| | ) | COURT FOR THE EASTERN |
| v. | ) | DISTRICT OF MICHIGAN |
| | ) | |
| **ESSEX INSURANCE COMPANY** | ) | **O P I N I O N** |
| | ) | |
| *Defendant-Appellee.* | ) | |

BEFORE:    KEITH, BATCHELDER, and COLE, Circuit Judges.

**R. GUY COLE, JR., Circuit Judge.** Plaintiff-Appellant AGK Holdings, Inc. ("AGK") sues Defendant-Appellee Essex Insurance Company, Inc. ("Essex") for insurance coverage relating to a damaged in-ground swimming pool. Essex moved for summary judgment, claiming that the damage was not covered by the insurance policy. The district court agreed and dismissed the case. For the following reasons, we **AFFIRM** the judgment of the district court.

**I.**

AGK owns the Best Inn & Suites Hotel in Flint, Michigan, which includes an in-ground concrete swimming pool enclosed in a brick and glass building with a retractable roof. The pool was drained in September 2002 for repairs, and left empty. On April 6, 2003, the pool and deck area were severely damaged when the deep end of the pool was raised several feet above the surrounding concrete deck, leading to widespread damage.

At the time of the damage, AGK had in force a commercial liability insurance policy issued by Essex. This policy explicitly covered "direct physical loss or damage to Covered Property" which includes a building, "completed additions," or "fixtures including outdoor fixtures." The policy also contained the following exclusion:

B.       EXCLUSIONS

        1.       We will not pay for loss or damage caused directly or indirectly by any of the following. Such loss or damage is excluded regardless of any other cause or event that contributes concurrently or in any sequence to the loss.

                g.       Water

                      (4)       Water under the ground surface pressing on, or flowing or seeping through:

                            (a)       Foundations, walls, floors or paved surfaces;

None of the terms in § B.1.g(4)(a) are defined in the policy.

Shortly after the damage, AGK contacted Essex seeking coverage of the damage to the pool and surrounding area. Essex's expert, William G. Rogers, issued a report stating:

> [T]he deep end of the pool rose out of the ground due to natural buoyancy on a possibly fluctuating shallow groundwater table. A simple view is a concrete pool is a concrete boat and will attempt to float on a water surface, groundwater. The weight of the pool's contained water is the ballast necessary to keep the pool within the groundwater . . . .
>
> The most critical concern for a pool being constructed is having to be emptied for maintenance; empty, an inground pool is at its most vulnerable state. In large inground pools it would not be unusual to find installed wellpoints around a pool's perimeter to artificially maintain a depressed groundwater table be pumping during periods of being empty. Such a dewatering system was not noted at this site. It was surprising to find the pool had been left in a nearly completely emptied state since September 2002.

Given this expert report, Essex denied coverage based on the exclusion for damage caused by groundwater.

AGK's expert, Theodore Dziurman, also determined the cause of the loss. Dziurman agreed that "removal of the water from the pool . . . was the reason the pool came out of the ground." Dziurman then stated that two kinds of water led to "two distinct saturation zones of perched groundwater" under the pool. The first type of water was regular "perched groundwater" while the second kind was "municipal water" that was "leakage from the pool and/or from corroded piping serving the pool."

Essex moved for summary judgment. The district court held that the groundwater exclusion of the insurance policy applied and denied coverage.

AGK then filed this timely appeal.

## II.

### A.    Standard of Review

This Court reviews *de novo* a district court's grant of summary judgment under Federal Rule of Civil Procedure 56. *City Mgmt. Corp. v. U.S. Chem. Co.,* 43 F.3d 244, 250 (6th Cir. 1994). This Court must "consider all the facts and inferences [] in the light most favorable to nonmoving party." *Id.*

### B. Michigan Contract Interpretation and Ambiguous Terms

Under Michigan law, an insurance policy is interpreted the same as other contracts. *Auto-Owners Ins. Co. v. Churchman*, 489 N.W.2d 431, 433 (Mich. 1992). Courts should "look at the contract as a whole and give meaning to all terms." *Id.* at 434. "[A]ny clause in an insurance policy

is valid as long as it is clear, unambiguous, and not in contravention of public policy." *Id.* If the contract language in unambiguous, "this Court enforces the contract as written." *Farm Bureau Mut. Ins. Co. v. Nikkel*, 596 N.W.2d 915, 919 (Mich. 1999).

A policy term is ambiguous "when its words may reasonably be understood in different ways. If a fair reading of the entire contract of insurance leads one to understand that there is coverage under particular circumstances and another fair reading of it leads one to understand there is no coverage under the same circumstances the contract is ambiguous . . . ." *Id.* at 919. If a term is ambiguous, the fact-finder may look to relevant extrinsic evidence, such as "the parties' conduct, the statements of its representatives, and past practice to aid in interpretation." *Klapp v. United Ins. Group Agency, Inc.*, 663 N.W.2d 447, 454 (Mich. 2003). If after reviewing the extrinsic evidence the parties' intent cannot be determined, then the contract term will be construed against the drafter. *Id.* at 454-55. This rule, sometimes called the rule of *contra proferentem*, should only be used as a "last resort, when other techniques of interpretation and construction have not resolved the question of which of two or more possible reasonable meanings the court should choose." *Id.* at 455-56.

In this case, the district court concluded that the language of the policy was "plain and straightforward; it excludes damage caused at least in part by (1) water under the ground surface (2) pressing on, or flowing or seeping through (3) floors or paved surfaces." D.Ct. Op., J.A. at 19 (quotations omitted). The district court then noted that the "common understanding of the terms 'floors' and 'paved surfaces' includes flat bottom surfaces and surfaces paved with concrete." D.Ct.

Op., J.A. at 22. Since the bottom of a swimming pool can be considered a "floor" or a "paved surface," the district court concluded that the application of the groundwater exclusion to the instant case was not ambiguous. Furthermore, both parties agreed that groundwater pressing on the pool caused at least part of the buoyancy that led to the eruption of the pool from the concrete deck. Accordingly, the district court concluded that the policy excluded recovery, and granted summary judgment for Essex.

On appeal, AGK argues that the groundwater exclusion does not apply to swimming pools. AGK claims that the common understanding of "floor" is "a flat surface for walking or the bottom surface of a particular room which supports people and objects." AGK further argues that the common understanding of a "paved surface" is "a concrete level surface for travel, such as a road, parking lot, driveway, sidewalk, or walkway." Accordingly, AGK argues that the application of "floor" and "paved surfaces" to a swimming pool is inexact and ambiguous, and should be construed against the drafter, Essex.

This argument is unpersuasive. AGK's argument assumes that varying definitions of a word necessarily result in a finding of ambiguity. However, Michigan courts have specifically noted that "A word is not ambiguous merely because different dictionary definitions exist." *Twichel v. MIC Gen. Ins. Corp.*, 676 N.W.2d 616, 622 n.6 (Mich. 2004). In addition, the "plain and ordinary meaning" of a word could include several situations with different factual scenarios. *See id.* (noting that the common term "owned" includes several circumstances such as when "agreement for sale

is reached, a portion of the purchase price is paid, and control and dominion of the vehicle are relinquished to the purchaser").

In this contract, the relevant terms of "floor" and "paved surface" are common terms that have multiple, common meanings that apply to a variety of different circumstances. For example, "floor" is defined as "1.a. The layer of boards, brick, stone, etc. in an apartment, on which people tread; the under surface of the interior of the room." OXFORD ENGLISH DICTIONARY (2d ed. 1989) ("OED") *available online at* http://dictionary.oed.com; *see also* WEBSTER'S THIRD NEW INT'L DICTIONARY OF THE ENGLISH LANGUAGE UNABRIDGED 873 (1986) (defining "floor" as "1: the bottom or lower part of any room: the part of a room on which one stands") ("WEBSTER'S"); AM. HERITAGE DICTIONARY OF THE ENGLISH LANGUAGE 675 (4th ed. 2000) (defining "floor" as "1a. The surface of a room on which one stands.") ("AM. HERITAGE"). But "floor" has an additional, common meaning of "The base of any cavity; the bottom of a lake, sea, etc." OED *available online at* http://dictionary.oed.com; *see also* WEBSTER'S 873 (defining "floor" as "2a: the lower inside surface of any hollow structure . . . b: the lower ground surface (as the bottom of the sea or the invert of the chamber of a canal lock)"); AM. HERITAGE 675 (defining "floor" as "7. The ground or lowermost surface, as of a forest or ocean").

Under Michigan rules of contract interpretation, the term "floor" could therefore be interpreted to encompass two non-identical meanings. Specifically, "floor" could refer to the walking surface of a room in a building, and also to the bottom of a cavity, such as an ocean or an in-ground swimming pool. *See Twichel*, 627 N.W.2d at 622-23 n.6 (noting various non-identical

meanings of the undefined term "owned"). AGK argues that this second sense of the term "floor"—as in an "ocean floor"— has a somewhat metaphorical meaning, and cannot be properly applied in the context of a commercial liability insurance contract.

Even if the application of the term "floor" to the bottom of a swimming pool is too metaphorical, coverage is still excluded for "paved surfaces," which has a more generic application. The term "surface" here clearly applies to the pool in this case. *See* OED *available online at* http://dictionary.oed.com (defining "surface" as "1.a. The outermost boundary (or one of the boundaries) of any material body, immediately adjacent to the air or empty space, or to another body").

The term "pave" has two commonly used meanings relevant here. One meaning is to uniformly cover a surface with a hard substance, like concrete. *See* OED *available online at* http://dictionary.oed.com (defining "pave" as "1.b. To overlie or cover as a pavement"); *id.* (defining "pavement" as "an undivided hard surface of cement, concrete, asphalt, or other materials"); *see also* AM. HERITAGE 1291 (defining "pave" as "2. To cover uniformly, as if with pavement"); WEBSTER'S 1658 (defining "pave" as "3: to serve as or provide material for a covering or pavement of"). A second, common meaning of "pave" specifically involves a smooth surface for travel. *See* OED *available online at* http://dictionary.oed.com (defining "pave" as "To lay or cover with a pavement (a street, road, court, yard, floor; hence, a town, house, etc.)"); *id.* (defining "pavement" as "1.b. The paved part of a public thoroughfare; the roadway as distinct from the adjacent footway"); AM. HERITAGE 1291 (defining "pave" as "1. To cover with a pavement"); *id.* (defining "pavement" as

"1a. A hard smooth surface, especially of a public thoroughfare, that will bear travel"); WEBSTER'S 1658 (defining "pave" as "1a: to lay or cover with stone, brick, asphalt, concrete, or other material making a firm, level, or convenient surface for travel").

Given these two common and general uses, the term "paved surface" clearly encompasses the pool in this case. The parties agree that the interior surface of the pool was a smooth, uniform, and hard surface made of concrete—a meaning that fits squarely within the ordinary, natural, and commonly used meaning of the term a "paved surface." Though the "paved surface" in the pool was not used for "travel," a term is not ambiguous simply because it applies to different factual scenarios. *See Twichel*, 627 N.W.2d at 622 n.6. While one may first think of a "paved surface" as something to be traveled on, such a meaning is not *necessary* to the common usage of the term. There are numerous smooth, uniform, flat, nearly-flat, or gently rounded surfaces covered in concrete or other stone-like substance, not used for travel, that are properly referred to as a "paved surface." Examples from the vicinity of this courthouse include a concrete bench, a concrete pedestal on which sits a piece of public art, and the raised protective concrete boundary around the garden.

To buttress its claim of ambiguity, AGK notes that the insurance policy specifically includes outdoor swimming pools for coverage, where the damage to the outdoor pool is caused by the collapse of a building. Insurance Policy, Causes of Loss § D(3)(d). AGK argues that since the policy specifically includes outdoor swimming pools for certain coverage, the policy drafters should have specifically mentioned swimming pools in the groundwater exclusion. Said differently, AGK

argues that the specific use of the term "swimming pool" for certain coverage, means that "swimming pool" should have been specifically used in other parts of the contract. AGK believes that this failure to specifically mention swimming pools indicates the groundwater exclusion does not apply. However, such an argument ignores the clear and unambiguous language of the contract terms. Since a "floor" or "paved surface" can be applied respectively to the bottom or interior surface of the swimming pool, inclusion of more specific language is not required.

For these reasons, we **AFFIRM** the judgment of the district court.