*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

VIVIAN WINANS,

        Plaintiff-Appellee,

v

FARMERS INS EXCHANGE,

        Defendant-Appellant,

and

DEBORAH MORRISON and MORRISON INS AGENCY,

        Defendants.

UNPUBLISHED
May 28, 2020

No. 347872
Oakland Circuit Court
LC No. 2018-163029-CZ

Before: BECKERING, P.J., and FORT HOOD and SHAPIRO, JJ.

PER CURIAM.

In this interlocutory appeal concerning homeowner's insurance benefits, defendant Farmers Insurance Exchange,[1] appeals by leave granted[2] the order partially granting and partially denying its motion for summary disposition under MCR 2.116(C)(10). Defendant contends on appeal that the trial court erred in (1) determining that genuine issues of material fact existed as to whether certain compact discs (CDs) for which plaintiff sought recovery constituted "business property" that fell within a business-property exception to plaintiff's insurance coverage, and (2) failing to address defendant's alternative argument that recovery in relation to the CDs was limited

---

[1] Defendants Deborah Morrison and Morrison Insurance Agency (collectively, "Morrison") filed their own motion for summary disposition that has yet to be resolved and is not the subject of this appeal. Accordingly, "defendant" hereinafter refers to Farmers Insurance Exchange only.

[2] *Winans v Farmers Ins Exch*, unpublished order of the Court of Appeals, entered June 28, 2019 (Docket No. 347872).

by a separate, electronic-media exception to plaintiff's insurance coverage. We agree with the latter point and reverse.

## I. FACTUAL BACKGROUND

Plaintiff is an established recording artist that has released approximately 12 musical albums in addition to a comedy album and related products over the past 30 years. During the period of time at issue, and for approximately 21 years, plaintiff lived at a home in Bloomfield Hills, Michigan. On the property, plaintiff had a main house and a pool house, or a "cabana." Allegedly unbeknownst to plaintiff, approximately $400,000 worth of her CDs were stored in the basement of the cabana. Plaintiff alleged that she had received the CDs from "Verity Records," with whom plaintiff once had a business relationship. The CDs were presumably placed in the basement by plaintiff's assistant, and plaintiff had essentially lost track of them. Plaintiff noted at her deposition that, ordinarily, CDs and other items that plaintiff would sell at her concerts were stored in her garage.

In early 2017, plaintiff's cabana flooded after a pipe burst and, among other things, the CDs stored in the basement were destroyed. Plaintiff submitted a claim with her homeowner's insurer, defendant. Defendant denied the majority of the claim. Relevant to this appeal was defendant's conclusion that the CDs that had been destroyed in plaintiff's cabana constituted "business property," and that a business-property exception in plaintiff's insurance policy limited plaintiff to $5,000 worth of recovery on business property.

Plaintiff filed suit against defendant for breach of contract, and against Morrison for breach of contract, breach of fiduciary duty, and negligence.[3] Defendant filed a motion for summary disposition under MCR 2.116(C)(10) and again argued that plaintiff was only entitled to $5,000 for the CDs because they constituted business property within the meaning of the insurance policy. Defendant argued in the alternative that, even if the CDs did not constitute business property, plaintiff was still limited to $5,000 in recovery due to a separate, electronic-media exception contained in the policy. After waiving oral argument, the trial court concluded that genuine issues of material fact existed as to whether the CDs constituted business property such that summary disposition was inappropriate as to that issue. The court noted:

> Addressing the CDs, Defendant contends Plaintiff offered the CDs for sale via the internet. In her affidavit, Plaintiff avers she did not sell the CDs at issue. She also avers the CDs were given away to her friends and family during the holiday season. In her deposition, Plaintiff testified she had sold some CDs on her website, but had not sold any in a long time, nor does the record indicate which CDs she sold on the website. During her deposition, Plaintiff referenced several times the CDs [in] the garage were the CDs she sold. She also denied any knowledge regarding CDs in the cabana. It is unclear from the record before the Court at this time whether the CDs in the cabana were offered for sale or only those CDs located in the garage.

---

[3] As noted above, Morrison filed a motion for summary disposition that has yet to be resolved.

* * *

In reviewing the evidence in the required light, it is possible the CDs in the cabana were not offered for sale given Plaintiff's testimony regarding the age of those recordings. It is possible for a reasonable juror to return a verdict in her favor as to this issue.

The trial court failed to address the electronic-media exception that was the basis of defendant's alternative argument.

We conclude that, irrespective of whether the CDs at issue constituted "business property," the business-property exception to coverage contained in plaintiff's insurance policy plainly does not apply to the CDs. That having been said, the electronic-media exception does apply, and under that exception, plaintiff was limited to a $5,000 recovery for the CDs at maximum. Because there is no dispute that defendant paid that $5,000, the trial court erred in denying the portion of defendant's motion for summary disposition related to the CDs.

## II. ANALYSIS

We review a decision to grant or deny summary disposition de novo. *Farm Bureau Ins Co v TNT Equip, Inc*, 328 Mich App 667, 671; 939 NW2d 738 (2019). "[W]e consider all documentary evidence submitted by the parties in the light most favorable to the nonmoving party." *Id*. Summary disposition "is warranted when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law." *Id*. We also review de novo as a question of law the interpretation of an insurance contract. *Twichel v MIC General Ins Corp*, 469 Mich 524, 544; 676 NW2d 616 (2004).

"An insurance policy, like other contracts, is an agreement between parties; a court's task is to determine what the agreement is and then give effect to the intent of the parties." *Farm Bureau*, 328 Mich App at 672. In determining the intent of the parties, we principally consider the "plain and unambiguous language of the contract itself." *Wyandotte Electrical Supply Co v Electrical Technology Sys, Inc*, 499 Mich 127, 143-144; 881 NW2d 95 (2016). We consider the contract as a whole and give meaning to all of its terms. *Farm Bureau*, 328 Mich App at 672. "[W]hen policy language is clear, we are bound by the language of the policy." *Id*. "It is the insured's burden to establish that [her] claim falls within the terms of the policy." *Heniser v Frankenmuth Mut Ins Co*, 449 Mich 155, 172; 534 NW2d 502 (1995).

The policy at issue in this case provided:

**Special Limits on Certain Personal Property**

* * *

4. **Business Property, other than electronic data processing equipment, media and data.**

-3-

Coverage for loss or damage to business property, other than computers, electronic data processing equipment, and accessories and recording or storage media used with the foregoing, is limited to:

a.  $5,000 limit while on the residence premises; and

b.  $500 limit while away from the residence premises.

**5.  Electronic data processing equipment, media and data.**

a. $5,000 limit on computers and electronic data processing equipment and accessories and recording or storage media used with the foregoing, whether or not it is business property.  Computers, electronic data processing equipment, and recording or storage media that cannot be replaced with other of like kind and quality on the current retail market is not covered.

b.  $1,000 limit for the cost of replacing data stored on computers, electronic data processing equipment, personal electronic entertainment equipment, communications equipment, accessories, electronic media or recording or storage media.  Data includes by way of example but is not limited to any type of software or text, image, video or audio files.

As a preliminary matter, we note plaintiff's vague contention that the two exceptions outlined above are ambiguous, and thus must be construed in favor of plaintiff.  We disagree that any ambiguities exist; the language is clear.

First, with respect to the business-property exception, plaintiff was limited to $5,000 worth of business property stored in her home "other than computers, electronic data processing equipment, and accessories and recording or storage media."  That property was plainly defined as including all "property related to or used for or intended for use in business," including "personal property . . . frequently use[d] in or for business or for business purposes."  Next, the electronic-media exception further limited plaintiff to $5,000 for recovery of electronic "storage media" that would be used with "computers and electronic data processing equipment."  That same paragraph provides that "recording or storage media that cannot be replaced with other of like kind and quality on the current retail market is not covered."

With that in mind, the trial court erred in concluding that the business-property exception was applicable in the first place because, pursuant to the plain terms of the exception, it does not apply to "computers, electronic data processing equipment, and accessories and *recording or storage media*."  Thus, we need not address the trial court's finding that genuine issues of material fact existed as to whether the CDs constituted business property because that finding is irrelevant.[4]

---

[4] We would note, however, that plaintiff's contention that the property was not business property but instead was a "gift" given to her by a record label that she once had a business relationship with is somewhat problematic.  Based on plaintiff's own testimony, the CDs were inarguably

Instead, by its plain terms, the electronic-media exception applied to "computers and electronic data processing equipment and accessories and *recording or storage media* used with the foregoing, *whether or not it* [was] *business property*," and limited recovery on those items to $5,000. The $5,000 electronic-media exception arguably applies, but as noted below, even if it does not, the subsequent provision that unique electronic storage media is not covered applies. Accordingly, under the electronic-media exception, plaintiff was only entitled to recover, at maximum, $5,000 for the CDs, and at minimum, nothing.

Plaintiff contends that defendant should be estopped from relying on the electronic-media exception because defendant failed to list that exception when it initially denied plaintiff's claim.[5] Indeed, as plaintiff notes in her brief on appeal, "[g]enerally, once an insurance company has denied coverage to an insured and states its defenses, the insurance company has waived or is estopped from raising new defenses." *Kirschner v Process Design Assocs*, 459 Mich 587, 593; 592 NW2d 707 (1999). Plaintiff's recitation of the law, however, is incomplete.

In *Smit v State Farm Mut Auto Ins Co*, 207 Mich App 674, 680; 525 NW2d 528 (1994), we noted that, indeed, "[t]he general rule is that once an insurance company has denied coverage to an insured and states its defenses, the company has waived or is estopped from raising new defenses." However, we further noted that "cases applying the doctrine of waiver and estoppel had primarily been ones that involved the insurer's assertion that the contract had been forfeited *because of noncompliance with conditions of the contract*." *Id*. (quotation marks and citations omitted) (emphasis added). Contrarily, waiver and estoppel are generally not available to a party seeking to use the doctrines to extend a policy's coverage. *Id*.[6] We noted in *Smit* that there were

---

produced in the context of a business relationship between plaintiff and the record label. When plaintiff acquired the discs, she did so because that business relationship had ended and plaintiff— by her own words—was seeking to recover money from the label that the label did not have. Plaintiff then explicitly testified that the business transaction did not end favorably because plaintiff "didn't sell" the CDs. Equally problematic is the suggestion that the CDs were not "related to" plaintiff's business simply because they were either (1) unmarketable, (2) misplaced in the basement of plaintiff's cabana, or (3) *occasionally* given as gifts to plaintiff's friends, family, and customers. Plaintiff is an established gospel recording artist and the property in question is roughly $400,000 worth of product related to that profession that plaintiff explicitly testified was initially intended to be sold.

[5] Plaintiff also briefly suggests that defendant failed to preserve its argument with respect to the electronic-media exception. We note, however, that although the trial court did not address the issue in its order regarding summary disposition, defendant did raise the issue below. Where an issue concerns a legal question and all of the facts necessary for its resolution are present, we do not punish parties for omissions on behalf of the trial court. See *Dell v Citizens Ins Co of America*, 312 Mich App 734, 751 n 40; 880 NW2d 280 (2015).

[6] By way of example, in *Michigan Twp Participating Plan v Federal Ins Co*, 233 Mich App 422, 435-436; 592 NW2d 760 (1999), we estopped the insurer from arguing that the insured could be denied coverage for failing to provide a sworn proof of loss after the insurer failed to include that argument in both an answer to the insured's complaint and a subsequent motion for summary

only two classes of cases whereby an insurer's liability could extend beyond the risks covered by the plain terms of the policy: (1) cases in which the insurer "rejected claims of coverage and declined to defend their insureds in the underlying litigation" but later raised issues that could have been raised in the underlying litigation, and (2) cases "where the inequity of forcing the insurer to pay on a risk for which it never collected premiums is outweighed by the inequity suffered by the insured because of the insurance company's actions." *Smit*, 207 Mich App at 680-681. See also *Kirschner*, 459 Mich at 594-595 (citing *Smit* to explain that application of waiver and estoppel to extend coverage beyond the contract is limited to "situations in which the insurance company has misrepresented the terms of the policy to the insured or defended the insured without reserving the right to deny coverage").[7]

Plaintiff has provided no authority to suggest that, under these circumstances, this Court can or should apply the doctrine of waiver and estoppel to extend plaintiff's insurance coverage beyond what was included in the plain terms of plaintiff's insurance contract,[8] and with that in mind, we decline to estop defendant from relying on the contractual language to determine the scope of plaintiff's coverage.

Plaintiff alternatively argues that the electronic-media exception only applies to "unused storage media" that could be readily replaced on the retail market, and that therefore the exception did not apply to plaintiff's CDs. Our dissenting colleague has made a related argument that, by its terms, the $5,000 limit applies to "computers and electronic data processing equipment," and only to storage media "used with the foregoing." The dissent suggests that CD players and the like would not necessarily be understood as "data processing equipment," and we note this logic could support plaintiff's argument that the $5,000 limit only applied to unused storage media. We are less confident that CD players cannot be reasonably categorized as "computers and electronic data processing equipment," but in any event, even assuming that argument to be true, it does not change the outcome.

In our opinion, it is the next clause of the electronic-media exception that is controlling: "Computers, electronic data processing equipment, and recording or storage media that cannot be replaced with other of like kind and quality on the current retail market is not covered." The clause plainly applies to unique storage media that cannot be replaced on the open market (e.g., plaintiff's recorded music). To further illustrate this point, accepting as true that the initial $5,000 coverage limit applied only to "unused storage media," or to storage media that would be used with "data

---

disposition. The defendant insurer in this case has not sought to deny plaintiff coverage based on plaintiff failing to comply with the insurance contract, but rather, defendant argues that the CDs are plainly not covered under the policy.

[7] We note that plaintiff might leap at the opportunity to make the former argument, but at this juncture, plaintiff has failed to adequately do so. Neither fraud nor misrepresentation were elements of plaintiff's breach of contract claim against defendant.

[8] Plaintiff briefly asserts that we should assume that defendant intended to provide coverage for the CDs based on the sheer amount of premiums it collected from plaintiff. We decline to hold that simply because plaintiff—in her opinion—paid high premiums, defendant therefore intended to assume the risk for property the contract explicitly did not cover.

processing equipment" other than CD players, it is clear that the electronic-media exception is directed at plaintiff's career as a recording artist. If the $5,000 coverage limit applied to unused CDs that had yet to be recorded on, then surely the next clause applied to those CDs that had been used with the "electronic data processing equipment," and became unique and unreplaceable on the open market. Taken as a whole, it would seem the purpose of the business-property exception and the electronic-data exception was to exclude business- and audio-recording related property from coverage, leaving the types of CDs that may have been covered under the policy to those unique items that could be found on the market and were not intended for use in plaintiff's career (e.g., recorded CDs from other artists).

Thus, even assuming arguendo that the first clause of the electronic-media exception that limits coverage to $5,000 only applies to "unused storage media," then plaintiff's CD's undoubtedly would fall under the second clause: "storage media that cannot be replaced with other of like kind and quality on the current retail market." That type of unique storage media is plainly *not covered* under the insurance policy.

As an aside, we note our dissenting colleague's position that paragraph 7 of the "Types of Personal Property Not Insured" indicates that the CDs at issue here *were* insured, but respectfully disagree. That provision provides that the following personal property was not insured under the policy:

> 7. any sound, video, mapping, tracking or communications equipment or device or system designed for reproducing, detecting, receiving, transmitting, recording or playing data, maps, location, sounds, videos or pictures, and is designed only to be operated from the electrical system of any **motor vehicle**, motorized land conveyance, watercraft, camper or home trailer while such equipment, device or system is in, on, or installed in a **motor vehicle**, motorized land conveyance, watercraft, camper or home trailer. This equipment includes by way of example but not limited to: citizen band radios, radio or cellular telephones, radio transceivers, radio transmitters, two way mobile radios, scanning monitor receivers, radar or laser detectors, car radio receivers, tape or disc players or recorders, global positioning system devices and any accessories, antennas, tapes, discs, software, reels, cassettes, cartridges, carry cases or other devices used with such equipment, device or system.

This provision excludes from coverage discs and other objects "designed only to be operated from the electrical system of any motor vehicle," that are physically stored or installed *inside* the motor vehicle. We disagree with the assertion that, because the policy did not cover CDs stored inside plaintiff's motor vehicles, that it necessarily did cover every CD stored elsewhere. As articulated above, a reasonable interpretation of the insurance contract as a whole is that some CDs stored inside plaintiff's home were covered, and pursuant to the electronic-media exception, some were not.

Suffice it to say that, it seems plaintiff received $5,000 because defendant initially believed that the property was subject to the business-property exception. That exception does not apply, and instead, the electronic-media exception should have applied. The plain language of that exception suggests that plaintiff was actually entitled to nothing for her damaged CDs.

Reversed and remanded for entry of an order granting defendant's motion for summary disposition. We do not retain jurisdiction.

/s/ Jane M. Beckering
/s/ Karen M. Fort Hood